(No. 69335.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIAM MURRAY, Appellee.

*Opinion filed May 30, 1990.—Rehearing denied October 1, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Paul Gliatta and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Milton Blum, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Two police officers observed defendant, William F. Murray, asleep in a car parked on the side of a road. The officers awoke defendant and asked him to produce a driver's license and to exit the car. After defendant exited the car, the police confiscated a gun which was seen in plain view. Defendant subsequently was charged by information in the circuit court of Cook County with unlawful use of a weapon by a felon. (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1.) Defendant's pretrial motion to quash his arrest and to suppress the evidence was denied. Following a bench trial, defendant was convicted as charged and sentenced to two years' probation with 15 weekends of incarceration. Defendant appealed from the denial of his motion to quash the arrest and suppress the evidence. The appellate court, with one judge dissenting, reversed, holding that because an unconstitutional seizure occurred when defendant was "ordered" to produce his license and exit the vehicle the trial court was manifestly erroneous in denying the motion. (188 Ill. App. 3d 488.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

The issue presented is whether the officers violated defendant's fourth amendment rights. We hold that

fourth amendment rights were not violated under the facts presented in this case. Therefore, we reverse the appellate court and affirm the circuit court's order denying the motion to quash and suppress.

Preliminarily, defendant raised the issue in a pretrial motion, which was denied after an evidentiary hearing, and again in a motion to reconsider. He also raised it during and after the trial. Therefore, the facts as presented below have been adduced from the testimony both at the evidentiary hearing and at the trial.

On the morning of October 4, 1986, defendant was sitting in the driver's seat of his automobile, which was parked on the frontage road adjacent to the Calumet Expressway near 104th Street and Doty Road in Chicago. The car was legally parked. Defendant testified that he had been en route to his son's funeral when he exited the highway and pulled over onto the roadside to regain his composure. Officers Charles Brown and James Flaherty were on patrol and became concerned about defendant's condition after observing him apparently asleep behind the wheel of his parked car. The officers parked behind the car and approached the vehicle. Officer Brown made his way to the driver's side and stood near the front end of the door, while Officer Flaherty stood at the driver's side and near the door handle.

The officers contend defendant was asleep when they approached the car. Officer Flaherty testified at trial that defendant was slumped over the steering wheel, and the arrest report which was filled out on October 4 also indicated that defendant had been slumped over the wheel. Defendant stated that he was not asleep, although the seat may have been in a semireclining position. Next, Flaherty awoke him by knocking on the window. Officer Brown testified that defendant appeared to be in some distress at this time. After defendant awoke, they asked him to exit the vehicle and produce his identification.

Defendant, however, testified at the suppression hearing that they did not have to awaken him and that the first thing the officers did was to tell him to exit the car and then they asked for his license. Defendant's trial testimony contradicts this. At the trial, defendant testified that after the officers parked their car he opened his door, turned, placed both feet on the ground and was practically out of the car as they approached.

Defendant stepped from his car and handed Flaherty his license. The door was apparently open and Brown observed a handgun on the floor of the car on the driver's side. Brown alerted his partner, and the officers confiscated the weapon and arrested defendant. Defendant testified that the door was closed. Additionally, at the suppression hearing, he stated that while one officer was checking his identification, the other officer searched his automobile after he had expressly denied the officer consent to the search. Although, at the trial he testified that the one officer pushed him aside, opened the door, pulled out a floor mat and retrieved a gun.

Defendant claimed he was unaware of the gun's presence or who owned it. Defendant, who had a criminal record and had been paroled from prison in 1980, was charged with unlawful use of a weapon by a felon.

At the trial, two other witnesses testified, both on defendant's behalf. Lucille Green, defendant's mother, testified that she was the owner of the car from which the weapon was recovered. In addition to herself, the only persons who drove the car were the defendant and his son. She added that on September 29, 1986, defendant's son died from gunshot wounds and that his funeral had been scheduled for October 4, 1986. Prior to his death, her grandson had been "in trouble" with the law.

Jerome McDonald testified that he was a security guard for the Chicago Housing Authority and was the registered owner of the handgun recovered from the ve-

hicle in which defendant was arrested. Apparently, Mc-
Donald had stored the weapon at his parents' home
within the previous year and it was either stolen or taken
from there without his knowledge, and somehow ended
up in the vehicle.

As noted earlier, the trial judge denied the pretrial
motion to quash the arrest and to suppress the evidence.
Although there was conflicting testimony on the facts, in
ruling on the issue, the trial judge stated that he resolved
the conflict in the evidence and credibility of the wit-
nesses in favor of the State. The court found that the of-
ficers properly approached the vehicle and checked on the
welfare of defendant and then observed the weapon in
plain view. Defendant raised the issue in a motion to re-
consider, after having obtained private counsel. The trial
judge heard oral argument but, based on the same
grounds, again held for the State. At the close of the
State's case at trial, defendant requested that the court
reconsider its ruling on the motion. The trial judge de-
nied the request. At the conclusion of defense counsel's
closing argument there was a request that his ruling on
the motion be reconsidered, but this too was denied.
Based on the evidence adduced at trial, the trial court
found defendant guilty as charged. In reaching this con-
clusion, the judge specifically stated that he did not find
defendant to be a believable witness. In a motion for a
new trial, defendant argued that the court should recon-
sider its ruling on the motion to quash. This motion was
denied.

A divided appellate court reversed, holding that the
trial court's denial of defendant's motion to quash the ar-
rest and suppress the evidence was manifestly erroneous.
The majority concluded that the officers were performing
a "community caretaking" function when they checked
on defendant and woke him up. However, they exceeded
the purpose of this function when, through a show of au-

thority, they ordered defendant to exit the vehicle and produce his license. The appellate court concluded that at that moment defendant's freedom of movement was restrained and that his fourth amendment right to be free from an illegal search and seizure was violated. The dissenting justice considered this to be merely a consensual encounter and that no seizure took place until after Officer Brown saw the handgun in defendant's car.

The trial court's ruling on a motion to suppress should not be overturned unless it was manifestly erroneous. (*People v. Neal* (1985), 109 Ill. 2d 216, 218; *People v. Reynolds* (1983), 94 Ill. 2d 160, 165.) We believe that the conclusions of the trial judge that defendant was not seized during this encounter with the police officers until after the gun was seen and that they were appropriately performing a "community caretaking" function is not manifestly erroneous.

There are, theoretically, three tiers of police-citizen encounters. (*United States v. Berry* (5th Cir. 1982), 670 F.2d 583, 591.) One tier involves an arrest of a citizen, which action must be supported by probable cause; otherwise, the fourth amendment prohibition against unreasonable seizures is violated. (*Henry v. United States* (1959), 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168.) The next tier involves a so-called "*Terry*" stop, a brief seizure that must be supported by a reasonable suspicion of criminal activity to be within acceptable fourth amendment boundaries. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The last tier involves no coercion or detention and therefore does not involve a seizure. This tier is commonly known as the community caretaking function or public safety function. The Supreme Court elaborated on this level of police intrusion in *Terry* when it noted that "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical

force or show of authority, has in some way restrained the liberty of\a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio* (1968), 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16; see also *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (local police officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute").

In *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, the parameters of what activity may be characterized as a seizure were discussed. *Mendenhall* involved Federal drug agents who approached defendant as she walked through an airport concourse. The agents identified themselves and asked to see her identification and airline ticket, which she produced for them. Justice Stewart announced the judgment of the Court and stated, in a section of the opinion which was joined by only Justice Rehnquist, that no seizure had taken place, explaining:

> "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' [Citations.] As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

\*\*\*

We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

\* \* \*

Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so informed. [Citation.] We also reject the argument that the only inference to be drawn from the fact that the respondent acted in a manner so contrary to her self-interest is that she was compelled to answer the agents' questions. It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily." *Mendenhall*, 446 U.S. at 553-56, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877-78.

*Mendenhall* was a 5-4 opinion. The three concurring Justices concluded there were grounds for a *Terry* stop and therefore did not pass on the correctness of Justice Stewart's seizure standard. The four dissenters did not question Justice Stewart's standard either. They did point out that the Justice had overlooked certain factors which would tend to support the conclusion that a seizure occurred but because the seizure issue was not raised below the record was inconclusive as to the factors Justice Stewart mentioned. However, the standard appears to have commanded the majority of the Supreme Court. In *Michigan v. Chestnut* (1988), 486 U.S. 567, 100 L. Ed. 2d 565, 108 S. Ct. 1975, the Court determined that no seizure had occurred and applied the *Mendenhall* test. (See also 3 W. LaFave, Search & Seizure §9.2(h), at 405-06 (2d ed. 1987) ([I]t is now clear "that the Stewart standard

commands a majority of the Court. In *Florida v. Royer*, also involving the stopping of a suspected drug courier at an airport, the four-Justice plurality endorsed that standard, as did Justice Blackmun in his dissent. But because there is no majority opinion in *Royer*, it is like *Mendenhall* in the sense that we are not provided with a clear application of the test").) We believe the standard is helpful and appropriate, and we recently cited it with favor. (*People v. Redd* (1990), 135 Ill. 2d 252, 284-85; *People v. Long* (1983), 99 Ill. 2d 219, 230; see also *People v. Hicks* (1989), 183 Ill. App. 3d 636, 643; *People v. Forrest* (1988), 172 Ill. App. 3d 385, 390-91 (citing Illinois appellate court cases which have followed *Mendenhall*).) Previous to the standard's being adopted by the majority of the Court, other courts also followed it when determining whether a seizure occurred or cited it with approval. See, *e.g., United States v. Berry* (5th Cir. 1982), 670 F.2d 583, 591-92; *Purce v. United States* (D.C. 1984), 482 A.2d 772, 776; *State v. Sims* (La. 1983), 426 So. 2d 148, 152; *Lightbourne v. State* (Fla. 1983), 438 So. 2d 380, 387-88; *Atchley v. State* (Ala. Crim. App. 1981), 393 So. 2d 1034, 1041-42.

In this instance there was no use of physical force or show of authority which would justify finding a seizure occurred. (*Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1876-77; *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16.) *Mendenhall* lists four examples of circumstances which may be indicative of a seizure, even where the person did not attempt to leave: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching of the person of the citizen, and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (*Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.) "In the absence of some such evidence, oth-

erwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." (*Mendenhall*, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. 1877.) None of these examples occurred in this case. There were not several officers present; there were only the two partners. No weapons were displayed during the whole encounter, except for the gun found in defendant's vehicle. Neither was there any testimony of a physical touching, at least not until after the officer saw the weapon.

The facts do not support defendant's assertion that the last example is present. The appellate court opinion states that there were "commands," "orders" and "demands" by the officers to exit the vehicle and produce the driver's identification and that these exhibited a show of authority. (188 Ill. App. 3d at 493-94.) We do not believe that this is an appropriate evaluation of the facts. There was contradictory evidence as to whether the officers requested or commanded the defendant's compliance. Defendant, in fact, contradicted himself as to whether he may have already been partially out of the automobile when the officers approached him. However, it is for the trial court to weigh the evidence. The trial judge stated that defendant was not a credible witness and that he resolved the evidentiary conflicts in favor of the State and then ruled for the State. After reviewing the record, we cannot find that this ruling is manifestly erroneous or that the "language or tone of voice" in this encounter indicates that compliance with the officers' request would have been compelled if it had been questioned.

This holding is consistent with the great weight of authority. A number of courts have held that the mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure. (*Lightbourne v. State* (Fla. 1983), 438 So. 2d 380, 387-89 (officer ap-

proached a car and asked its driver some simple questions); *State v. Marks* (1979), 226 Kan. 704, 710, 602 P.2d 1344, 1350; *Crauthers v. State* (Alaska App. 1986), 727 P.2d 9, 11; *State v. Montoya* (App. 1980), 94 N.M. 542, 543-44, 612 P.2d 1353, 1354-55; but see *People v. Freeman* (1982), 413 Mich. 492, 493, 320 N.W.2d 878, 879 (seizure occurred when officers approached car which was parked in a private lot with its motor on and asked for I.D. and for driver to exit vehicle).) It has also been held that the result does not change when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window or, if necessary, open the door if the occupant is asleep. (*People v. Ledwa* (1980), 81 Ill. App. 3d 276, 278; *State v. Clayton* (1988), 113 Idaho 817, 818, 748 P.2d 401, 402; *State v. Kuskowski* (1986), 200 Conn. 82, 85, 510 A.2d 172, 174; *State v. Sims* (La. 1983), 426 So. 2d 148, 152-53; *State v. Boswell* (W. Va. 1982), 294 S.E.2d 287, 294-95 (officer walked up to van, tapped on window and asked for identification); *State v. Kersh* (Iowa 1981), 313 N.W.2d 566, 568; *Anchorage v. Cook* (Alaska 1979), 598 P.2d 939, 942 (reasonable for officer to open door, awaken driver and request that he exit vehicle after receiving report of a possible accident and observing driver lying on front seat with ignition on); *Guardiola v. State* (1978), 268 Ind. 404, 413-14, 375 N.E.2d 1105, 1111; *Howell v. State* (Miss. 1974), 300 So. 2d 774, 775; but see *Wibben v. North Dakota State Highway Commissioner* (N.D. 1987), 413 N.W.2d 329, 331.) "A request that the suspect open the door or roll down the window would seem equally permissible." (3 W. LaFave, Search & Seizure §9.2(h), at 416 (2d ed. 1987).) Therefore, it is clear that approaching the vehicle and waking the defendant by tapping on the window was not a seizure and defendant apparently does not contend otherwise.

The encounter may be characterized as a seizure if the officer orders, rather than requests, that the occupant open the door or exit the car. (*Jones v. United States* (D.C. 1978), 391 A.2d 1188, 1190 (no seizure when officer approached the car; however, when he ordered the occupants out a seizure occurred); *State v. Smith* (1975), 141 Ga. App. 172, ____, 233 S.E.2d 30, 32 (officer's instructions to car occupants to either open door or roll down window constituted a seizure); 3 W. LaFave, Search & Seizure §9.2(h), at 416 (2d ed. 1987).) However, we have held that the record does not support the appellate court's conclusion that defendant was ordered or commanded to exit and produce identification. The officers saw a driver who appeared to be asleep and checked on his condition. After waking him they asked him to step out of the car and show his license. This request allowed the officers to see whether the person they had just awakened and who may have appeared to be in some distress was fit to drive. Certainly, this purpose could have been satisfied by questioning defendant further and observing his responses. Nevertheless, defendant could have declined to exit the car or inquired why the request was made, but failure to do so does not transform a consensual encounter into a seizure. *Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324; *Mendenhall*, 446 U.S. at 555-56, 64 L. Ed. 2d at 510, 100 S. Ct. at 1878.

For the above-stated reasons, we reverse the appellate court and affirm the trial court's denial of defendant's motion to quash the arrest and suppress the evidence.

*Appellate court reversed;*
*circuit court affirmed.*