### State of Vermont v. Robert J. Burgess

[657 A.2d 202]

No. 93-448

Present: **Allen, C.J., Gibson, Dooley, Morse** and **Johnson, JJ.**

Opinion Filed January 27, 1995

*Peter R. Neary*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellant.

*John H. Bloomer* and *John H. Bloomer, Jr.*, of *Bloomer & Bloomer, P.C.*, Rutland, for Defendant-Appellee.

**Morse, J.** The State appeals from an order of the Rutland District Court granting defendant's motion to suppress evidence that defendant was operating a motor vehicle while intoxicated, 23 V.S.A. § 1201. We affirm.

The essential facts are not in dispute. On the afternoon of December 7, 1992, a police officer travelling south on a road in Proctor observed a vehicle in a lawful pull-off area on the west side of the road, facing north. Driving by, the officer noticed that the vehicle had its engine running and its parking lights on. The officer turned his cruiser around and pulled up behind the parked vehicle, activating his blue lights. He had no indication that anything was wrong or any information about the vehicle before stopping. The officer approached the driver's side of the vehicle and observed defendant behind the wheel and a passenger in the next seat. The officer asked the defendant whether he was having problems. Defendant replied that there were none and that he had only stopped "to relieve himself." At that point the officer made observations leading to DUI processing.

Defendant moved to suppress the evidence obtained by the officer on the ground that the officer lacked probable cause for the initial stop. The court found that there was no evidence that defendant was either violating a traffic law or committing a crime. The court then noted our decision in *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.), holding that in some circumstances a police officer may intrude on privacy to carry out "community caretaking" functions, but concluded that the facts of this case did not fall within the *Marcello* exception:

> While clearly the level of proof to justify the inquiry and intrusion is slight, there must be some reasonable basis on which to make the inquiry. Without such a requirement, an officer would be free, under the community caretaking function, to inquire of any stopped/parked vehicle the nature and circumstances of the stop. Such intrusions, without specific and articulable facts to justify them, are clearly outside the scope of the community caretaking exception set forth in *Marcello*.

The State's appeal focuses principally on the argument that no stop occurred, and that there was no need for a "reasonable and articulable suspicion" of wrongdoing.

## I.

The question before the Court is whether the conduct of the police in displaying blue lights after pulling in behind defendant's stopped vehicle constituted a stop, and we hold that it did. A "stop" is shorthand way of referring to a seizure that is more limited in scope and duration than an arrest. 3 W. LaFave, Search and Seizure §§ 9.1(c), at 340, 9.2(d), at 363 (2d ed. 1987). Consequently, police need not force or signal a vehicle to the side of the road to effect a stop of persons in the vehicle. See *Adams v. Williams*, 407 U.S. 143, 145-48 (1972) (treating officer's approach of voluntarily parked vehicle and tap on window as forcible stop). While "'the mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure,'" *State v. Sutphin*, 159 Vt. 9, 12, 614 A.2d 792, 794 (1992) (Dooley, J., concurring) (quoting *People v. Murray*, 560 N.E.2d 309, 313 (Ill. 1990)), activity which inhibits a person's freedom of movement does. *Id.* at 14, 614 A.2d at 795. Courts have long held that a show of authority tending to inhibit a suspect's departure from the scene is sufficient to constitute a stop, even though the vehicle is already stopped at the time of an approach by police. See, e.g., *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 330, 331 (N.D. 1987) (approaching parked car and tapping on window with flashlight was seizure under Fourth Amendment); *State v. Walp*, 672 P.2d 374, 375 (Or. Ct. App. 1983) (use of overhead lights behind voluntarily stopped car was sufficient show of authority to restrain liberty of defendant within meaning of state statute where test for stop is identical to test under Fourth Amendment); *State v. Stroud*, 634 P.2d 316, 318 (Wash. Ct. App. 1981) (Fourth Amendment seizure occurred when officers pulled up behind parked vehicle and activated lights). While flashing blue lights do not always constitute a show of authority, the evidence in this case, viewed objectively, supports the conclusion that the use of lights served as a show of authority that tended to inhibit a person's departure from the scene. The officer may have subjectively intended to activate his blue lights solely "for the safety of other vehicles on the road," as the court found, but the litmus test is the objective belief of a reasonable person in the position of the defendant. *California v. Hodari D.*, 499 U.S. 621, 628 (1991). This is not a case where one would feel free to leave; defendant's

vehicle was the sole subject of the officer's use of the flashing blue lights.

## II.

■ Secondly, the State argues that the court erred in failing to apply the "community caretaking" exception set forth in *Marcello*. An example of the proper application of the community-caretaking function can be found in *State v. Merritt*, 149 Vt. 529, 530, 546 A.2d 791, 791 (1988). In *Merritt*, a police officer approached a car parked in a rest area after observing the driver slumped over the steering wheel. The officer rapped on the window, but was unable to awaken the driver. *Id.* Although unsure why the driver was slumped over the wheel, the officer had reason to believe the driver was in need of assistance. This case is quite different because there were no specific articulable facts justifying the intrusion. The court specifically found that defendant's vehicle was lawfully parked in a pull-off on the side of the road with its parking lights on. There was nothing in the manner in which the vehicle was parked to indicate that defendant was in any type of distress. There were no indications of illness, or that the car was disabled; in fact, the car was running when the officer passed by. There was no evidence that an accident had occurred.

The court was correct that without "some reasonable basis on which to make the inquiry," the *Marcello* exception would devour the requirement of reasonable articulable suspicion. The night may have been cold and the vehicle not in a designated rest area, as the State argues. But absent from the State's analysis is any objective indication that caretaking was required. Winters are traditionally long in Vermont, and we cannot adhere to a theory that essentially renders Fourth Amendment protections seasonal.

*Affirmed.*

**Dooley, J.,** dissenting. This case is factually indistinguishable from *State v. Sutphin*, 159 Vt. 9, 614 A.2d 792 (1992), where, in a concurring opinion, I stated my view that no seizure had occurred. *Id.* at 13, 614 A.2d at 794. Nothing in the interim has changed my opinion, and accordingly, I dissent from Parts I and II of the majority opinion.

## I.

A major part of my disagreement with the majority is in its holding that use of flashing blue lights creates a seizure even though the vehicle was not stopped by the police officer. It reaches this conclu-

sion, in part, by warring with the facts found by the district court. As in *Sutphin*, the incident in question occurred after dark, in this case during a cold night in the winter. The district court found that the blue lights were activated "for the safety of other vehicles on the road." While recognizing this finding, the majority states to the contrary that "defendant's vehicle was the sole subject of the officer's use of the flashing blue lights." The main subject of the flashing lights was other motorists on the road who would come upon the two vehicles and needed to be warned to pass carefully. If the officer had activated blue lights in an area like an interstate highway rest area, the majority's view would have some validity.

Second, the majority's conclusion that a "stop" occurred in this case is clearly inconsistent with any common sense definition of that term. I understand our difference on whether a seizure has occurred, but the majority's argument is not improved by labeling as a "stop" conduct that cannot be so characterized.

As I explained in my concurrence in *Sutphin*, I believe the decisions of the United States Supreme Court are moving away from labeling such minor restrictions on individual movement as seizures. To the extent the precedents relied upon by the majority support its position, they are outdated and not in accord with more recent analysis. A far more relevant precedent is *State v. Hanson*, 504 N.W.2d 219 (Minn. 1993), based on facts identical to those in this case.

In reversing the Court of Appeals and finding no seizure, the Minnesota Supreme Court reasoned:

> The problem with the court of appeals' decision is that it in effect says that *whenever* an officer turns on the squad car's flashing red lights before getting out and approaching an already stopped car, the officer turns the encounter into a seizure. It may be that in many fact situations the officer's use of the flashing lights likely would signal to a reasonable person that the officer is attempting to seize the person for investigative purposes. In this case, however, under all the facts, the officer's conduct would not have communicated to a reasonable person in these physical circumstances that the officer was attempting to seize the person. A reasonable person would have assumed that the officer was not doing anything other than checking to see what was going on and to offer help if needed. A reasonable person in such a situation would not be surprised at the use of the flashing lights. It was dark out and the cars were on the shoulder of the highway far from any town. A reasonable person would know

that while flashing lights may be used as a show of authority, they also serve other purposes, including warning oncoming motorists in such a situation to be careful.

*Id.* at 220 (emphasis in original). I believe that the *Hanson* analysis is the more appropriate way to analyze the facts of this case.

## II.

Second, I agree with the State that if there was a seizure here, it was not unreasonable and thus there was no violation of the Fourth Amendment to the United States Constitution or Chapter I, Article 11 of the Vermont Constitution. See *State v. Record*, 150 Vt. 84, 85, 548 A.2d 422, 423 (1988) (provisions in United States and Vermont Constitutions prohibit only "unreasonable" searches and seizures). As we pointed out in *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.), "officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out 'community caretaking' functions to enhance public safety." We emphasized that "[t]he key to such constitutionally permissible police action is reasonableness." *Id.*

The Virginia Court of Appeals recently applied the community caretaking function to a situation very similar to that here except that by the time the officer activated his flashing lights, the defendant's vehicle had already begun to leave the side of the road. *Barrett v. Commonwealth*, 447 S.E.2d 243 (Va. Ct. App. 1994). Recognizing that because defendant's vehicle was in motion, a stop had occurred, the court found the officer's action justified by the community caretaking function. *Id.* at 246. It held that this function was involved when the officer has reasonable and articulable suspicion, based on observed facts, that the operator "is in distress or in need of assistance." *Id.* This suspicion was created by the presence of the vehicle off the shoulder of the road in the nighttime, circumstances consistent with "a situation of mechanical breakdown or personal distress." *Id.* The court concluded that society expects a helping hand from police officers in such a situation.

A determination of reasonableness involves a balancing of the level of intrusiveness on privacy against the state's interest in the intrusion and the degree to which the intrusion justifies that interest. See *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990) (DUI roadblocks). The United States Supreme Court has characterized the degree of intrusion involved in DUI roadblocks as "slight." *Id.* at 451. The intrusion here is lesser still.

I explained in *Sutphin* that I believe that the officer's actions are exactly what we want to encourage to protect the safety of the community, other operators on the road, and the persons in the parked vehicle. Even if the officer's actions are motivated by the desire to find impaired drivers, we have found that interest weighty, *State v. Record*, 150 Vt. at 89-90, 548 A.2d at 426, and the conduct here is no less efficient than roadblocks in advancing that interest. I am at a loss to understand how we can uphold roadblocks and find the conduct here unreasonable.

The majority gives short shrift to the claim of reasonableness because the officer's thought process involved the fact that it was a cold winter night and defendant was not in a rest area, stating these considerations would make "Fourth Amendment protections seasonal." This analysis ignores that the over-arching standard is reasonableness. If something were physically wrong with the occupants of a stopped vehicle, the consequences are far more serious in the winter than in the summer. I see nothing unreasonable in the officer taking into account that risk in deciding whether to inquire of the occupants of the vehicle.

The majority's conclusions will require police to abandon important community protection activities or to conduct them in a way that is more dangerous to the public and the individuals whose privacy the majority seeks to protect. Neither result is commanded or justified by the Fourth Amendment or Article 11. Accordingly, I dissent.