NO. 4-98-0130

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from

Plaintiff-Appellee,          )   Circuit Court of

v.                           )   Macon County

KaRON D. GREEN,                        )   No. 97CF736

Defendant-Appellant.         )   

                                       )   Honorable 

                                       )   James A. Hendrian,

                                       )   Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1997, the State charged defendant, KaRon D. Green, with armed violence (720 ILCS 5/33A-2 (West 1996)) and possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 1996)).  In August 1997, defen­dant filed a motion to suppress evidence, and in September 1997, the trial court heard and denied it.    

In October 1997, the trial court conducted a bench trial, at which the parties stipulated that the court could consider the evidence previously presented at the hearing on defendant's motion to suppress.  Following the stipulated bench trial, the court found defendant guilty of armed violence and possession of a controlled substance.  The court later sen­tenced defendant to 15 years in prison on the armed vio­lence convic­tion, the minimum sen­tence statuto­rily permitted.  720 ILCS 5/33A-3(a) (West 1996).  

Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress evidence; and (2) under the circumstances of this case, the 15-year mandatory minimum sen­tence for armed vio­lence vio­lates the disproportionality and due process clauses of the Illinois Constitution.  We affirm.

I. BACKGROUND

At the September 1997 hearing on defendant's motion to suppress evidence, the only witnesses who testified were defen­

dant and Decatur police officer David Pruitt.  Pruitt testified that on the afternoon of May 4, 1997, he was dis­patched to the area of Church and Leafland Streets in Decatur because an uniden­

tified caller had informed the police that a black male, wearing blue jeans and having gold teeth, was on the corner point­ing a gun at another black male, who had long hair.  Pruitt drove to the inter­sec­tion and saw a white Buick parked nearby with three black males inside.  

Pruitt parked his car about 30 feet from the Buick and watched as the occupants got out of that car.  One of them, defen­dant, who was wearing blue jeans and a sweatshirt began walking toward Pruitt.  As defen­dant ap­proached Pruitt, Pruitt asked defen­dant if Pruitt "could talk to him for a minute.  He complied."  Defendant stopped to speak with Pruitt, who told defendant about the call the police had received and asked defendant if he had seen anything like that.  Pruitt then testi­

fied that defendant "raised his arm in disgust at something I guess I had said."  When defen­dant made this ges­ture, the sweat­

shirt covering his jeans pocket raised up, permit­ting Pruitt to see a bulge in defendant's right front jeans pocket.  Pruitt be­

lieved the bulge was a small handgun based on his training, experience, and the outline of the object.  

Pruitt then asked defendant to put his hands on his head.  Defendant com­plied, and Pruitt patted down the outside of defendant's clothing where he saw the bulge.  When he felt what he believed to be a handgun inside defendant's pocket, Pruitt removed the object from defendant's pocket and found it to be a .38 caliber Danish derringer.  

Pruitt then arrest­ed defendant and placed him in the backseat of Pruitt's squad car for transport to the police sta­

tion.  Pruitt subse­quent­ly found some cocaine in the backseat of his squad car.  Although that cocaine was the basis of the posses­sion of a con­trolled substance charge against defen­dant, defen­dant not contest the State's claim that the cocaine found in Pruitt's squad car came from defendant.  

Defendant testified substantially the same as Pruitt.  Defendant said that as he walked from the Buick, Pruitt said, "could you please come here."  On cross-examination, the prosecu­

tor asked defendant the following questions and received the following answers: 

"Q.  And then your testimony is that [Pruitt] asked you, can I search you, cor­

rect?

A.  Yeah.

Q.  And you told him that he could?

A.  Yeah."

Defendant also acknowledged that he had the handgun in his right front jeans pocket.

The trial court denied defendant's motion, explain­ing, in part, as follows:

"The [d]efendant testified he gave con­

sent to search.  The only issue is whether the initial stop is appropriate.  It is clear under these circumstances that it was.  Even if the [d]efendant did not give his consent to search, the search is appro­priate under these circumstances."

As stated earlier, defendant later stipulated that the trial court could consider at his bench trial the evidence pre­

sent­ed at the hearing on the motion to suppress.  The court did so, found defendant guilty of armed violence based upon his being armed with a handgun while committing the offense of possession of a controlled substance, and later sentenced defen­dant to 15 years in prison upon that conviction.  This appeal fol­lowed.

II. ANALYSIS

A. Defendant's Motion To Suppress

Defendant first argues that the trial court erred by denying his motion to suppress.  Specifically, defendant claims that Pruitt had no authority to conduct an "investigatory stop" of defendant because Pruitt had no basis to believe or suspect that defendant had committed, was committing, or was about to commit a criminal offense.  The problem with defendant's argument is that the record does not support his claim that the police made an "investigatory stop" of defendant in the first place.

In 
People v. Murray
, 137 Ill. 2d 382, 387-88, 560 N.E.2d 309, 311-12 (1990), the supreme court discussed police-

citizen encounters as follows:  

"There are, theoretically, three tiers of police-citizen encounters.  [Citation.]  One tier involves an arrest of a citizen, which action must be supported by probable cause; otherwise, the fourth amendment pro­

hibition against unreasonable seizures is violated.  [Citation.]  The next tier in

volves a so-called `
Terry
' stop, a brief seizure that must be supported by a reason­

able suspicion of criminal activity to be within acceptable fourth amendment bound

aries.  [Citation.]  The last tier involves no coercion or detention and therefore does not involve a seizure.  This tier is commonly known as the community caretaking function or public safety function.  The Supreme Court elaborated on this level of police intrusion in 
Terry
 when it noted that `[o]bviously, not all personal intercourse between policemen and citizens involves "seizures" of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'  
Terry v. Ohio
 (1968), 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16; [citation]."

As the State points out, the record in this case shows that defendant approached Pruitt and stopped to speak with him at Pruitt's request.  Because nothing about this encounter was coercive or somehow involved the use of physical force or a show of authority, the fourth amendment simply does not apply.

Further, the record shows--as the trial court found--

that once defen­dant and Pruitt began con­vers­ing, either (1) defen­dant consented to the search of his person (according to defendant's testimo­ny); or (2) defendant raised his arms in a fashion to reveal the bulge in the outline of a handgun in his right front jeans pocket (according to Pruitt's testimo­ny).  Either way, Pruitt possessed authority to seize the handgun from defendant's person and arrest him based thereon.

The supreme court in 
Murray
 held that a "trial court's ruling on a motion to suppress should not be overturned unless it was manifestly erroneous."  
Murray
, 137 Ill. 2d at 387, 560 N.E.2d at 311.  Based upon our review of the record, we conclude that the trial court's ruling denying defendant's motion to suppress was far from manifestly erroneous.

B. The Constitutionality of Defendant's 15-Year

Sentence for Armed Violence

Last, defendant argues that his 15-year sentence under the armed violence statute for an underlying probationable offense (possession of a controlled substance), which itself carries a maximum term of imprisonment of three years, violates the disproportionality and due process clauses of the Illinois Consti­tution.  Specifically, defendant contends that the severe penal­ties imposed by the armed violence statute 

"are not about deterrence, but are purely about punish­ment.  If the armed violence statute were intended to deter the commission of a crime while carrying a gun and the vio­

lence which could potentially result[,] it should not be punished more severely than the commis­sion of a crime 
using
 a gun."  (Empha­

sis in original.)

We disagree.

The supreme court recently addressed--and rejected--

similar arguments challenging the constitutionality of the armed violence statute.  In 
People v. Koppa
, No. 83962, slip op. at 11 (October 22, 1998), ____ Ill. 2d ____, ____, ____ N.E.2d ____, ____, the court wrote the following:  

"The plain language of the armed violence statute demonstrates that the legislature was targeting the carrying of a weapon in the commission of felonies.  ***  Given the re­

quired presence of a weapon for an armed violence offense, the legislature reason­ably could have decided to impose a more stringent penalty [than it did for aggravated criminal sexual abuse and aggravated kidnapping (the other charges involved in 
Koppa
)] be­cause of the high risk of bodi­ly harm asso­ci­ated with the pres­ence of a weap­on.  We will not dis­

turb the legislature's determina­tion that such conduct is worthy of a greater penalty."

We also reject defendant's argument that the penalty for the predicate felony--here, a maximum of three years in prison with the possibility of proba­tion--should somehow re­strict the legislature's authority to impose severe penalties upon convic­tion of that same Class 4 felony 
when
 
the
 
offender
 
is
 
carrying
 
a
 
gun
.  Reflecting societal concerns, the legislature could reason­ably con­clude that persons who commit felonies 
of
 
whatever
 
nature
 while carry­ing a gun ought to receive a mandatory minimum 15-year prison sentence 
both
 as punishment and deter­

rence.  Obvious­ly, the people who commit such crimes are being punished; fur­ther, the very harshness of their punishment should make it clear to other persons contem­plating committing felonies that they better not do so while armed.  We deem that message to be entire­ly appropriate.

Citing 
People v. Davis
, 177 Ill. 2d 495, 687 N.E.2d 24 (1997), defendant argues that the mandatory 15-year minimum sentence for armed violence in this case vio­lates the propor­tion­

ate penalties clause of the Illinois Consti­tution.  Specifi­cally, defendant con­tends that 
Davis
 requires a general cross-comparison analysis.  In 
Koppa
, the supreme court ad­dressed this same argument by a defendant charged with aggra­vated crimi­nal sexual abuse and aggravated kidnapping and wrote the follow­ing:

"The third test [(which is the only one that applies to defendant's claim in this case)] under the proportionate penalties clause remains to be considered.  It provides that the proportionate penalties clause [of the Illinois Constitution] is violated where con­duct that cre­ates a less serious threat to the public health and safe­ty is punished more harshly than a simi­lar but more serious of­

fense.  See 
Davis
, 177 Ill. 2d at 503; [cita­

tions].  This court has recognized that, al­

though the pro­portion­ate penalties clause places some re­straint on legislative power to define of­fenses and prescribe penalties, the legisla­ture is more aware of the evils con­

fronting our society and therefore is more capable of measuring the seriousness of vari­

ous offens­es.  *** 

*** Defendant *** contends that the armed violence of­

fenses violate the constitu­

tional guaran­

tee of propor­

tionate sen­tences because they share the same purpose as the other charged offens­

es.  According to defendant, the purpose behind each charged offense was to deter and punish the use of a weapon while commit­

ting a felony.  Defendant therefore rea­

sons that, because the purpose of the offenses are the same, a more stringent pen­alty for armed violence is constitu­

tionally dis­

proportionate.

This court has recognized that, where offenses serve a different purpose, each offense can be subject to different penal­

ties.  [Citation.]  It has already been de­

termined that the legislature passed the armed violence statute with the purpose of deterring persons from carrying dangerous weapons when they commit a felony.  [Cita­

tion.]  The same purpose does not exist for aggravated criminal sexual abuse and aggra­

vated kidnapping, which can arise in situa­

tions where a weapon is not involved.  Thus, it can be presumed that the legislature con­

sidered different factors in enacting the penalty provision for armed violence than for aggravated criminal sexual abuse and aggra­vated kidnapping.  Consequently, defendant's claim fails."  
Koppa
, No. 83962, slip op. at 10-12 (October 22, 1998), ____ Ill. 2d at ____, ____ N.E.2d at ____.

See also 
People v. Espinoza
, No. 85050, slip op. at 6 (October 22, 1998), ____ Ill. 2d ____, ____, ____ N.E.2d ____, ____  (where the supreme court reversed the trial court's dismissal of aggra­vated battery and armed violence counts on the ground that the penal­ties for those offenses violate the proportionate penalties clause of the Illinois Constitution).  

We conclude that the holdings in 
Koppa
 and 
Espinoza
 apply to this case as well, and we thus reject defendant's consti­tu­tional challenge to the armed violence statute.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent from that portion of the majori­

ty decision upholding the 15-year mandatory minimum sentence for armed violence.   

Defendant was charged with armed violence, based upon a predicate offense of possession of a controlled substance (less than 15 grams of cocaine).  Armed violence with a category I weapon such as a handgun is a Class X felony with a minimum term of impris­on­ment of 15 years.  720 ILCS 5/33A-3(a) (West 1996).  Defen­dant com­pares that punish­ment with the punish­ment for other offenses where the weapon is actually used.  For example, a person who commits aggravated battery with a firearm, who causes injury by the discharge of a firearm, where the victim is an ordi­nary citizen, is guilty of a Class X felony with a minimum term of imprisonment of six years.  720 ILCS 5/12-4.2(b) (West 1996); 730 ILCS 5/5-8-1(a)(4) (West 1996).  

The question in this case is whether the proportionate penalties clause has been violated under the third test set out in 
Koppa
, "where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more harshly."  
Koppa
, No. 83962, slip op. at 4 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___.  Courts are espe­cial­ly defer­en­tial to the legis­la­ture when apply­ing this test.  
Koppa
, No. 83962, slip op. at 10 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___.  
In 
Koppa
, the court con­clud­ed that armed vio­lence is not a less serious offense than aggra­vated criminal sexual abuse or aggra­vated kidnapping, because of the high risk of harm associat­ed with the presence of a weapon.  
Koppa
, No. 83962, slip op. at 11 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___.  The same cannot be said of this case.  A person who carries a firearm while he possesses a controlled substance clearly is "a less serious threat to the public health and safety" than someone who actually uses that firearm to injure some­one.   

In 
Espinoza
, where the defendant allegedly struck an indi­vidual with a bottle while in a public bar, the court applied the second test referenced in 
Koppa
, 
i.e.
, "where identical offens­es result in differ­ent sen­tences" (
Koppa
, No. 83962, slip op. at 4 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___) (citing 
Christy
 and 
Lewis
).  See 
Espinoza
, No. 85050, slip op. at 4, 6 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___.  The court con­clud­ed that armed vio­lence predi­cat­ed on aggra­vated battery (public way) committed with a catego­ry III danger­ous weapon was not "identi­cal" to aggravated battery accompanied by one of several enumer­ated aggravating circumstanc­

es listed in subsection (b) of the aggra­vated battery statute (720 ILCS 5/12-4(b) (West 1994)).  
Espinoza
, No. 85050, slip op. at 6 (October 22, 1998), ___ Ill. 2d at ___, ___ N.E.2d at ___.  The case before us does not involve identi­cal offens­es, the second 
Koppa
 test, but similar offenses, the third 
Koppa
 test.  

Defendant asks that we vacate the armed violence conviction and remand for sentencing on the unlawful possession count.  I would, however, vacate the 15-year sen­tence and remand for sen­tenc­ing as a Class X felony with a minimum of 6 years.