**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 16, 2006
Decided June12, 2006

**Before**

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

No. 05-4103

| | |
|---|---|
| JOSEPH A. LUNINI, JR., <br>      *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois |
|   *v.* | |
| | No. 02-3028 |
| CHARLES V. GRAYEB ET AL., <br>      *Defendants-Appellees* | Jeanne E. Scott, <br> *Judge.* |

## O R D E R

Following an alleged physical altercation, Joseph Lunini, Jr., sued his former boyfriend Charles Grayeb, police officer Stuart Barden, police officer Jeffrey Kice, and John Stenson, individually and in his official capacity as Peoria chief of police, (collectively "defendants") in district court.

We first considered this case on appeal when the district court denied the defendants' motion for summary judgment on Lunini's equal protection claim against the defendants in their individual capacities. We reversed the district court's decision, finding that the individual defendants were entitled to qualified immunity because the equal protection rights that Lunini alleged were violated were not clearly established at the time of the incident. *See Lunini v. Grayeb*, 395

F.3d 761, 773 (7th Cir. 2005). We did not consider Lunini's claim against Stenson in his official capacity as Peoria chief of police. On remand, the district court entered summary judgment in favor of the individual defendants.

Also on remand, the district court considered Lunini's claims that: 1) defendants violated Lunini's Fourth Amendment right to be free from unreasonable seizure and defendants conspired to do so; 2) Stenson, in his official capacity, deprived Lunini of equal protection of the laws in violation of the Fourteenth Amendment and Stenson conspired to do so; and 3) Grayeb denied Lunini his substantive due process right to familial relations. Lunini now appeals the district court's decision granting summary judgment for these claims in favor of defendants and Stenson in his official capacity. For the reasons below, we affirm.

We review the grant of summary judgment *de novo*, viewing all facts in the light most favorable to Lunini. *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). In 1997, Joseph Lunini, Jr., and Charles Grayeb moved into a house that Grayeb owned at 510 West High Street in Peoria, Illinois. After living there for several years, Lunini was preparing to move out of the house. On June 30, 2000, at 4:00 a.m., Lunini went to the house and began packing some of his belongings. Then, according to Lunini, Grayeb came downstairs, became angry with Lunini, and slapped Lunini's face twice and punched his face once. Grayeb denies slapping and punching Lunini.

Lunini called the police, and Officers Stuart Barden and Jeffrey Kice were dispatched to the High Street property. Barden and Kice, who were in separate cars, stopped on the way there, and discussed that they were going to the house where Grayeb, a Peoria councilman, lived.

When Barden and Kice arrived, Grayeb called the police station and asked the dispatcher to page Police Chief John Stenson. Stenson called Grayeb, and they spoke briefly. Then Stenson spoke to Officer Barden. Stenson asked Barden if there was evidence of violence, such as broken furniture, torn clothes, broken glass, or if anyone had hand injuries. Barden replied that there was no such evidence and that he could not determine how Lunini was injured because there were no witnesses. Stenson told Barden that, if there was no preponderance of evidence to make an arrest, Barden should get both parties' account of what happened and make a police report. Stenson told Barden to escort Lunini off of the property and have Lunini leave his gate and door openers.

Lunini told Officer Barden that Grayeb had slapped and punched him. Barden observed that Lunini's lip was bleeding, and Barden later noted that in his police report.

Barden relayed Stenson's instructions to Officer Kice. Then Kice told Lunini that he must leave the property and leave his keys and gate and door openers, or he would be arrested. The officers escorted Lunini into the house so he could change from his bathrobe into street clothes. After Lunini changed his clothes, Barden explained to Lunini how to get an order of protection. Lunini then left in his Jeep.

## I.

Lunini claims that the district court erred in ruling that the police officers' seizure of Lunini was not an "unreasonable seizure" in violation of the Fourth Amendment. To establish a constitutional violation, Lunini had to establish 1) that he was seized; and 2) that the seizure was unreasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002). First, the district court found that there was at least a genuine issue of material fact as to whether Lunini was seized because the police ordered Lunini to leave the house, and to give them the keys and door openers, or be arrested.

Next, the court considered *White*, a Seventh Circuit case where a police officer's decision to remove a resident from a house after a domestic altercation was found to be reasonable. Using the reasoning from *White*, the district court determined that even if Lunini was seized, the seizure was not unreasonable. We agree.

The reasonableness of a seizure is determined by weighing an "individual's privacy interests against legitimate government interests" in view of the totality of the circumstances. *White*, 310 F.3d at 995. The government has a legitimate interest in restoring peace to a disorderly situation. *Id*. at 996. In *White*, in order to restore the peace an officer had to order one party to leave a residence, and he chose the party with an apparently inferior possessory interest in the property. *Id*. We held that this decision was not unreasonable even if it was shown at a later time that the officer reached an incorrect conclusion. *Id*. In this case, the police officers were faced with a domestic dispute between Lunini and Grayeb, and Lunini had a bloody lip. The officers did not believe there was enough evidence to arrest Grayeb, but they needed to reestablish peace by separating Lunini and Grayeb. They learned that Lunini intended to move out of the house. While the facts of *White* and Lunini's situation differ, the legal test is the same. Under Lunini's facts, the officers' decision to order Lunini to leave the house was reasonable since he appeared to have the inferior possessory interest in the property.

Finally, Lunini's allegations of conspiracy are not relevant when evaluating the reasonableness of the police officers' decision because, as discussed below, Lunini did not sufficiently state a claim for conspiracy.

Neither did the officers exceed the scope of their community caretaking function when they allegedly seized Lunini. To argue that the officers exceeded the scope of their community caretaking function, Lunini cites *People v. Murray* where the court held that the community caretaking police function does not include seizures. 560 N.E.2d 309, 311 (Ill. 1990). However, the *Murray* court considered seizures only in the context of a police encounter during which "a reasonable person would have believed that he was not free to leave." *Id.* at 312. In this case, Lunini was free to leave the High Street property. Therefore, the *Murray* rule does not apply to this case.

In *White* we did not resolve whether a seizure occurs where a plaintiff was free to leave but was not "free to stay" at his own residence. 310 F.3d at 993. *White* did establish, though, that in some circumstances police officers may, as part of their community caretaking function, separate parties to a domestic disturbance by ordering one party to leave the premises regardless of whether that order amounts a seizure. *See* 310 F.3d at 995-96. Thus, the officers did not exceed the scope of their proper function.

The district court also correctly ruled that Lunini did not sufficiently state a claim against the defendants for conspiracy to violate his Fourth Amendment right to be free of unreasonable seizure. A conspiracy is "an agreement between two or more persons to accomplish an unlawful purpose." *U.S. v. Stotts*, 323 F.3d 520, 522 (7th Cir. 2003). Lunini argues that the following contributed to the conspiracy he alleges: Grayeb and Stenson's conversation at the Peoria city hall; Grayeb's statement to Lunini that the police would not do anything if he called for help; Barden and Kice's discussion before arriving at the High Street property; Stenson's phone conversation with Grayeb and Barden at the High Street property; Barden's failure to mention Stetson's call in his initial police report; and Stenson, Barden, and Kice's testimony at Grayeb's July 28, 2000, Domestic Violence hearing.

Lunini cannot establish that defendants conspired to violate his Fourth Amendment right because, even if the officers "seized" Lunini when they ordered him to leave the High Street property, they did so lawfully. "A person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992). Therefore, the district court properly granted summary judgment in favor of the defendants.

## II.

The district court did not err in ruling that Lunini failed to establish a "class of one" equal protection claim and an equal protection conspiracy claim against Stenson in his official capacity as Peoria chief of police. To establish a "class of one" equal protection claim, a plaintiff must either show 1) that he was treated

differently from others similarly situated and that there was no rational basis for the treatment; or 2) that the government treated unequally individuals who are prima facie identical in all relevant respects, and that the cause of the different treatment is an illegitimate animus. *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002).

Lunini argues that he was treated differently because Grayeb, as a city councilman, was "prestigious." He asserts that he is similarly situated to other domestic violence victims, and that he was treated differently from those victims because Stenson, as Peoria chief of police, intervened in the situation on behalf of Grayeb. However, Lunini fails to identify a *actual* similarly situated individual who was treated differently from him. Therefore, summary judgment was appropriate for this claim. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).

Finally, Lunini does not assert sufficient facts supporting a conspiracy to violate his rights to equal protection. As discussed above, when Stenson intervened to order Lunini to leave the property, his order was lawful. Since Lunini does not assert any additional facts that support the "unlawful purpose" element of the conspiracy claim, the district court properly granted summary judgment for Stetson in his official capacity.

### III.

The district court correctly ruled that Lunini could not show that Grayeb caused him to be deprived of his substantive due process right to visitation with his children under the Fourteenth Amendment. The district court found that "the orders of protection caused Lunini's restriction to the property, and not Grayeb's actions, except for four or five hours" and "Lunini cannot show that Grayeb caused Lunini to be deprived of the exercise of his family visitation rights." *Lunini v. Grayeb,* 305 F. Supp. 2d 893, 913 (C.D. Ill. 2004).

Lunini argues that Grayeb conspired with the police defendants to encourage Lunini to seek an order of protection, that as a result of this order Lunini could not visit with his children at the High Street property, and that because he could not visit with his children at the High Street property Lunini lost visitation with them for 45 days.

This court has never found a substantive due process violation where a regulation that does not govern family relationships directly has the incidental and unintended effect of separating family members. *See Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir. 1985). Here, Lunini does not allege that Grayeb caused him to lose his right to family visitation. Lunini only alleges that

Grayeb's actions made it necessary for Lunini to find a new place to visit with his children, and that Lunini was not able to do so.  Because Lunini fails to allege that his loss of visitation was a sufficiently direct result of Grayeb's actions, this loss did not amount to a violation of substantive due process.  The district court appropriately granted summary judgment in Grayeb's favor.

The judgment of the district court is therefore AFFIRMED.