THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL DALE, Defendant-Appellant.

Fourth District   No. 5—97—0474

Argued November 12, 1998.—Opinion filed December 2, 1998.

Daniel M. Kirwan and Dan W. Evers (argued), both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 1996, the State charged defendant, Darrell Dale, with possession of a controlled substance with intent to deliver (15 grams or more but less than 100 grams of a substance containing heroin) with a prior conviction of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(1)(A) (West Supp. 1995)). In July 1996, defendant filed a motion to suppress evidence obtained from the motel room in which he was staying. In September 1996, the trial court held a hearing on defendant's motion and later denied it. In June 1997, the court conducted a stipulated bench trial, found defendant guilty of the offense, and sentenced him to eight years nine months in prison.

Defendant appeals, arguing only that the trial court erred by denying his motion to suppress evidence. We reverse.

I. BACKGROUND

At the September 1996 hearing on defendant's motion to suppress evidence, the trial court heard testimony from defendant, the motel manager, and two of the police officers who obtained evidence from defendant's motel room. That testimony showed the following.

On January 19, 1996, defendant was renting a room at a Decatur motel on a day-to-day basis. Motel personnel had noticed an unusually

high volume of traffic in and out of defendant's room, and the cleaning staff had observed items in the room that they suspected were related to drug trafficking. Accordingly, the motel manager decided to tell defendant he could no longer stay at the motel. Because of his concern for safety and security, the manager called the Decatur police and asked them to remove defendant from the premises.

When the police officers arrived, they knocked on the door to defendant's room and identified themselves. Defendant let the officers enter his room and also consented to being frisked. The police found several hundred dollars in cash on defendant's person. Defendant then consented to a search of the room, but he withdrew his consent shortly after the officers began looking around the room.

When defendant withdrew his consent, the officers informed him that the motel manager wanted him to leave. He agreed to do so. At that point, one of the officers "advised [defendant] that [the police] would stand by *** while he got his things and left the room." Defendant made no protest.

One of the officers went to the closet, where defendant's clothes were hanging, and started squeezing them "to make sure [they contained] no weapons or anything." That officer took articles of clothing out of the closet and handed them to defendant, who began packing them into a paper bag.

During this process, a small, clear plastic bag containing a white powdery substance appeared on the floor at defendant's feet. The police handcuffed defendant and conducted a field test on the substance inside the plastic bag. The test yielded a negative result.

The police then released defendant and told him that he could leave; however, they also told him that he could not take any of his belongings out of the room. After defendant left the motel, the police had the motel manager modify the door lock in such a way that only the police—and not defendant—could obtain access to the room. One officer waited in the motel lobby, while two other officers went to obtain a search warrant.

These two officers took the plastic bag containing the white powdery substance to the Decatur police headquarters, tested it again, and obtained a positive result for the presence of cocaine. The search warrant application included information about the white powdery substance and the positive test result.

Later that same day, a judge issued a search warrant, and the police executed it. From within defendant's former motel room, they seized 16.5 grams of a substance containing heroin, electronic scales, documents that appeared to be records of drug trafficking, and some packaging material.

In May 1996, the State charged defendant as earlier stated. In July 1996, defendant moved to suppress everything that the police seized both before and during the execution of the search warrant. In September 1996, the trial court conducted a hearing on this motion and later denied it in a written order. The court subsequently convicted defendant at a stipulated bench trial and sentenced him as stated.

This appeal followed.

## II. THE MOTION TO SUPPRESS

Defendant argues that because the police in this case violated the fourth amendment's prohibition against unreasonable searches and seizures (U.S. Const., amend. IV), the trial court erred by denying his motion to suppress the evidence they obtained from the motel room. We agree.

Although defendant's motion to suppress sought to exclude all the items seized on January 19, 1996, none of defendant's arguments on appeal relate to the cash that the police seized during their pat-down of defendant. Accordingly, we address only those contentions relating to the drugs, scales, documents, and packaging material.

■ The small plastic bag that fell on the floor while defendant was packing his belongings is at the center of this appeal. Everything else that followed is a result of the officers' discovery of that bag. Because fourth amendment protections apply to a rented motel room just as they apply to a person's home (*People v. Kozlowski*, 278 Ill. App. 3d 40, 44, 662 N.E.2d 630, 633 (1996)), and motel personnel cannot waive the constitutional protections of their guests (*People v. Vought*, 174 Ill. App. 3d 563, 568, 528 N.E.2d 1095, 1099 (1988)), we must first examine whether the seizure of the small plastic bag complied with the requirements of the fourth amendment. We conclude that it did not. We also conclude that the police had no lawful authority to order defendant to leave all of his belongings in the motel room when he left.

### A. The Small Bag That Appeared on the Floor

■ The State claims that the plain view doctrine applies to the police officers' seizure and testing of the small bag that appeared at defendant's feet while he was packing his belongings. The plain view doctrine authorizes the police to seize an item without a search warrant when the following requirements are satisfied: (1) the police view the item from a place where they are legally entitled to be; and (2) it is immediately apparent to the police that the item may be evidence of a crime, contraband, or otherwise subject to seizure. *People v. Edwards*, 144 Ill. 2d 108, 134, 579 N.E.2d 336, 345 (1991); *People v. Watkins*, 293 Ill. App. 3d 496, 502, 688 N.E.2d 798, 802-03 (1997).

We begin our analysis by focusing on the first prong of this test—

that is, whether the police were legally entitled to be in defendant's room at the time that the small bag appeared on the floor. The State argues that the officers' presence in the motel room was lawful because (1) defendant consented to their presence; (2) exigent circumstances justified their presence; and (3) the police were lawfully engaged in an eviction. Because we reject all three of these justifications, we need not address the second prong of the test for applying the plain view doctrine.

### 1. Defendant's Consent

The State contends that the police were present in defendant's motel room by invitation because, after defendant consented to the officers' initial entry into the room, he never told the officers that he wanted them to leave the premises while he packed. We disagree.

■ The police may not enter premises with consent and then exceed the scope of that consent once inside. *People v. Harrell*, 226 Ill. App. 3d 866, 873, 589 N.E.2d 943, 948 (1992); *People v. Coleman*, 194 Ill. App. 3d 336, 340-41, 550 N.E.2d 1263, 1267 (1990). Thus, the scope and duration of the officers' lawful presence in defendant's room was governed by the scope of his consent and not, as the State argues, by the scope of their ultimate purpose in visiting him. Here, the police asked defendant if they could "step in and speak with him," and his consent that they could do so was limited by the circumstances of that request. See *People v. Kelk*, 231 Ill. App. 3d 797, 800-01, 596 N.E.2d 1267, 1269 (1992) (considering context of officer's request to search defendant's car in determining the scope of defendant's consent). Accordingly, defendant only consented to having the police enter the room to talk to him—not to watch him pack his belongings.

■ Despite these principles, the State contends that the officers could reasonably assume, absent a request for them to leave, that defendant's consent to their presence was ongoing. This argument might be interesting in the proper case—namely, where the police obtain consent to enter a person's motel room and then simply announce that the motel management has asked them to evict that person. In such a case, if the person were to begin packing in front of the officers, his silence *might* be viewed as implying his continuing consent to the officers' presence in the room.

However, that hypothetical situation is not this case. Here, defendant had just finished telling the officers that he did not wish for them to search his room. The officers' response essentially was: "You mean we can't go through all of your personal belongings? Okay, then you pack up all your personal belongings and we'll stand here and watch you do it." One of the officers went one step further, actually remov-

ing articles of defendant's clothing from the closet, squeezing them (for the express purpose of determining whether they contained any weapons or contraband), and then handing them to defendant.

We do not view the officers' words and conduct as the opening of a dialog on the subject of whether they should stay in the motel room. Instead, their words and conduct constituted a *directive*. Thus, defendant then had three choices. He could either (1) argue with the police; (2) forcibly attempt to remove the police from the room; or (3) accede to the officers' assertion of authority. That defendant chose the third of these three options hardly constitutes consent.

The State's contrary position is untenable. Adopting such a position would require suspects, when faced with a clear assertion of police authority, to resist. Not only would public safety not be enhanced by adopting such a rule, it would be diminished. A person faced with a show of police authority should always feel secure obeying the commands of a police officer; the failure to obey can result in criminal liability. See *People v. Villarreal*, 152 Ill. 2d 368, 374-75, 604 N.E.2d 923, 926 (1992) (crime to resist arrest, even if arrest is unlawful).

Accordingly, we conclude that the State may not rely on defendant's previous consent for the officers to enter his motel room—for the limited purpose of talking to him—to justify their presence there when the small plastic bag appeared on the floor.

## 2. Exigent Circumstances

■ Citing only *People v. Testa*, 125 Ill. App. 3d 1039, 466 N.E.2d 1126 (1984), the State alternatively argues that the officers properly remained in defendant's motel room in response to exigent circumstances. In *Testa*, the police arrested the defendant at his residence, while the defendant was wearing only underwear. The police allowed the defendant to go to his bedroom and dress, but they accompanied him. *Testa*, 125 Ill. App. 3d at 1042, 466 N.E.2d at 1130. The court reached the unsurprising conclusion that it was reasonable for the police to keep the defendant in their sight after arresting him. *Testa*, 125 Ill. App. 3d at 1043, 466 N.E.2d at 1130.

In the present case, defendant was not under arrest when the police informed him that they would stay in his room. The officer who made that decision explained it as follows:

"Q. [Defense Counsel:] Why didn't you go outside and wait outside while [defendant] packed his own clothing?

A. We have had situations like that w[h]ere we have ended up in [a] barricade circumstance.

[Defendant] had his little daughter there, and we had no idea what the situation was, you know. If he was supposed to have her or whatever, and [it is just] a practice for officer safety that we

don't let anyone get out of our sight once we make contact. They can always obtain a weapon, if they have one; and for officer safety we don't do that."

The State bears the burden of demonstrating the existence of exigent circumstances, thereby justifying a warrantless search or seizure. *People v. McNeal*, 175 Ill. 2d 335, 345, 677 N.E.2d 841, 846 (1997). In determining whether exigent circumstances exist, the court must consider all the facts and circumstances of the particular case and decide whether the police responded reasonably to the situation confronting them. *McNeal*, 175 Ill. 2d at 345-46, 677 N.E.2d at 847. No exigency for officer safety exists unless the suspect's conduct constitutes " 'an immediate and clear danger to the police or to the safety of those around him.' " *People v. Galdine*, 212 Ill. App. 3d 472, 483, 571 N.E.2d 182, 189 (1991), quoting *People v. Foskey*, 136 Ill. 2d 66, 78, 554 N.E.2d 192, 198 (1990).

Here, the police remained in defendant's motel room because it was their practice to do so. In other words, the police were not responding to any exigency particular to the situation before them. The requisite showing of "immediate and clear danger" to officer safety was clearly lacking.

The State attempts to bolster its argument by pointing out that one of the officers knew that defendant had fought with police in the past. We are unpersuaded. First, this contention the State presents on appeal contradicts the testimony of the officer who actually decided the police would stay in defendant's room. Second, the State did not present any evidence at the suppression hearing to demonstrate that defendant was resistant or aggressive toward the officers during this particular encounter.

Our conclusion might be different if the State had shown that defendant was threatening the police officers, expressing anger at the situation, or refusing to vacate the room. Likewise, the State may be able to carry its burden by presenting evidence that the entire police-citizen encounter took place under circumstances where it is reasonable to expect—even in the absence of threatening conduct in the presence of the police—the citizen to be in an aggressive mood, such as when the police respond to a report of domestic violence. However, the record before us is devoid of any such evidence. In short, the State failed to meet its burden of demonstrating that exigent circumstances existed in this case.

### 3. The Lawful Eviction of Defendant

■ Finally, the State suggests that the police properly responded to the motel manager's request to aid in evicting defendant, and thus the

officers were lawfully in defendant's room while he was packing his belongings. Although we agree that the police officers were acting within their authority when they responded to the motel manager's request to escort defendant from the premises, we disagree with the State's assertion that evicting a motel tenant provides an independent exception to the fourth amendment.

Although the State has not explicitly used the term, we view the State's argument as being that the police were properly performing their "community caretaking" function when they agreed with the motel manager's request that the police assist in removing defendant from his motel room. In *People v. Murray*, 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311-12 (1990), our supreme court described the community caretaking function as follows:

> "There are, theoretically, three tiers of police-citizen encounters. [Citation.] One tier involves an arrest of a citizen, which action must be supported by probable cause ***. [Citation.] The next tier involves a so-called '*Terry*' stop, a brief seizure that must be supported by a reasonable suspicion of criminal activity ***. [Citation.] The last tier involves no coercion or detention and therefore does not involve a seizure. This tier is commonly known as the community caretaking function or public safety function."

The court went on to note that the community caretaking function of the police frequently is " 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *Murray*, 137 Ill. 2d at 388, 560 N.E.2d at 312, quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (1973).

In this case, the motel manager's desire to avoid a confrontation with a guest under these circumstances is entirely reasonable, and his decision to terminate defendant's occupation of the motel room, once he suspected that defendant was trafficking drugs from the room, is commendable. Likewise, we commend the police officers for their willingness to facilitate defendant's peaceful removal from the motel. Such activity is entirely consistent with their duties as "peace officers" (720 ILCS 5/2—13 (West 1994) (defining a "peace officer" as one "vested by law with a duty to maintain public order")), and it comports with the discussion of the community caretaking function of the police discussed in *Murray*.

Nevertheless, the community caretaking function does not provide an independent exception to the requirements of the fourth amendment. Instead, it is a moniker used to describe consensual encounters between the police and members of the public. As the supreme court in *Murray* noted, the public caretaking function of the police applies

to encounters that involve "no coercion." *Murray*, 137 Ill. 2d at 388, 560 N.E.2d at 312; see also *People v. Smith*, 266 Ill. App. 3d 362, 365, 640 N.E.2d 647, 649 (1994) ("Of course, a person questioned by the police pursuant to their community caretaking or public safety function remains free to decline to answer the officers' questions"). Thus, our earlier rejection of the State's contention that the police officers remained in defendant's motel room by consent forecloses the State's attempt to use community caretaking to justify the officers' presence in that room.

Accordingly, we conclude that the police were not lawfully present in defendant's motel room at the time that the plastic bag appeared on the floor. The plain view doctrine did not apply, and the police officers unlawfully seized the bag and its contents.

## B. The Order for Defendant To Leave His Possessions in the Room

■ We also conclude that the police lacked authority to order defendant to leave his possessions in the motel room while the police sought a search warrant. In reaching the opposite conclusion, the trial court relied on the following language from *Vought*, 174 Ill. App. 3d at 571, 528 N.E.2d at 1100:

> "[A]ny potential danger to hotel employees [from the presence of narcotics in a hotel room] could have been averted by locking the door to [the room] and preventing entry while a search warrant was sought."

Both the United States Supreme Court and the Supreme Court of Illinois have addressed the propriety of such premises lockouts. In *Segura v. United States*, 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984), the Supreme Court of the United States issued a highly fractured opinion containing the following passage:

> "[S]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Segura*, 468 U.S. at 810, 82 L. Ed. 2d at 612, 104 S. Ct. at 3388.

However, as our own supreme court has pointed out, the portion of the *Segura* opinion containing that passage represented the view of only Justice O'Connor and Chief Justice Burger. Thus, it is not binding precedent. *People v. Casazza*, 144 Ill. 2d 414, 418-19, 581 N.E.2d 651, 654 (1991).

The *Casazza* court went on to examine *Segura*'s underpinnings to determine whether they compelled the conclusion that the police have the authority to "seize" premises while seeking a search warrant. The court concluded that the police lack such authority (*Casazza*, 144 Ill.

2d at 424, 581 N.E.2d at 656), and we view this conclusion as overruling the contrary language found in *Vought* upon which the trial court relied.

Other than the reference to *Vought*, the State provides no justification for the officers' seizure of the defendant's belongings, which the officers directed him to leave behind in the motel room after they evicted him. We add that we are aware of no justification for their directive. Accordingly, the evidence the officers later obtained from their search of these belongings should be suppressed even though that search was conducted pursuant to a search warrant because—leaving aside for the moment the problem of the primary justification for the search warrant being the test results of the substance inside the small plastic bag that we earlier held was improperly seized—the belongings were still present in the motel room and capable of being searched only because the officers unlawfully prohibited defendant from removing those belongings when he was evicted.

Accordingly, we hold that the police obtained the drugs, scales, documents, and packaging material illegally, and the trial court erred by denying defendant's motion to suppress that evidence. Because we have now concluded that the only evidence linking defendant to the crime charged should have been suppressed, we reverse and do not remand for further proceedings.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

GARMAN, J., and KNECHT, P.J., concur.