**Charles F. FINSEL, Plaintiff,**

**v.**

**W. Patrick HARTSHORN, in his official capacity as Sheriff of Vermilion County, Illinois; Vermilion County Deputy Tom Cruppenink, in his individual and official capacities; Vermilion County Sheriff Deputy Sgt. Auterman, in his individual and official capacities; BPT Company, Inc., d/b/a Knight's Inn, a foreign corporation; and Rosella J. Payne, jointly and severally, Defendants.**

**Case No. 00–CV–2239.**

United States District Court, C.D. Illinois, Urbana Division.

April 25, 2002.

John H. Otto, Zimmerly, Gadau, Selin & Otto, Champaign, IL, for Plaintiff.

Michael W. Condon, John J. Timbo, Hervas, Sotos, Condon & Bersani, Itasca, IL, for Defendants.

## ORDER

McCUSKEY, District Judge.

This case is before the court for ruling on a Motion for Summary Judgment (# 46) filed by Defendants Tom Cruppenink and Daniel Auterman and a Motion for Summary Judgment (# 50) filed by Plaintiff, Charles F. Finsel. Following this court's careful and thorough review of the documents filed by the parties and the arguments of the parties, Plaintiff's Motion for Summary Judgment (# 50) is GRANTED in part and DENIED in part and Defendants' Motion for Summary Judgment (# 46) is GRANTED in part and DENIED in part. This case remains set for a final pretrial conference on May 24, 2002, at 3:30 p.m. and remains set for a jury trial on June 10, 2002, at 9:30 a.m.

## FACTS

Plaintiff is 68 years old and resides in Findlay, Ohio. On December 15, 1999, Plaintiff paid for a room for two nights at the Knight's Inn in Danville, Illinois. Plaintiff was driving a 36 foot truck and parked the truck on a private drive next to his room at the motel. According to Rosella Payne, who was the manager of the motel at that time, there were two signs posted which stated that no trucks with a trailer over 20 feet long could park in that area. Payne testified that Plaintiff's truck was blocking access to parking for another room at the motel. That room was unoccupied. Payne testified that, on December 16, 1999, she called Plaintiff's room and told him that he would have to move his truck. Payne stated that Plaintiff told her he would not move it unless he got a full refund for the room. Payne testified that Plaintiff called back and told her that he was going to press charges for harassment. After that, Payne sent two men, Joe and Tim, to knock on Plaintiff's motel room door, but Plaintiff did not answer the knock. Payne tried to call Plaintiff but got no answer. Payne then contacted the Vermilion County Sheriff's Department to ask for assistance in getting Plaintiff to move his truck from its location on the private road. Payne testified that she was worried about whether Plaintiff was all right because he seemed upset on the telephone. However, she stated that the main reason she called for assistance was because she wanted the truck moved.

Tom Cruppenink, a Vermilion County deputy sheriff, testified that he received

the call to go to the motel. He arrived there at approximately 6:54 p.m. and spoke to Payne. Cruppenink testified that Payne told him that Plaintiff was argumentative and verbally abusive on the telephone. Payne told him that, since then, she had not been able to reach Plaintiff by phone and he refused to answer his door. Cruppenink stated that Payne told him she wanted Plaintiff's vehicle removed and was concerned about criminal damage inside his motel room.[1] Cruppenink also testified that Payne told him that she did not feel safe with Plaintiff there and wanted him evicted.

Cruppenink tried to call Plaintiff's room but there was no answer. Cruppenink and Payne then went to Plaintiff's room. Cruppenink knocked on the door numerous times, first with his hand and then with his flashlight, and identified himself as a deputy sheriff in a loud voice. There was no answer. Payne then tried to open the door with her key. The door did not open all the way because a chain lock was on the door. In addition, according to Cruppenink, there were bars running across the top of the door which were holding the door closed. Cruppenink again knocked on the door and identified himself. Payne then gave Cruppenink permission to kick in the door. According to Cruppenink, Payne stated that she wanted Plaintiff evicted. Cruppenink testified that Payne "was very concerned about criminal damage to the motel room, and ... she requested that I force the door open." Cruppenink either pushed or kicked the door open. He entered the room and shone his flashlight into the dark room. He testified that he identified himself as a deputy sheriff.

According to Cruppenink, after he got to the end of the hallway, Plaintiff came around the corner holding a knife up in his hand and said to get out of his house. Cruppenink testified that he told Plaintiff to drop the knife. Cruppenink stated that he grabbed Plaintiff's wrist and continued to demand that Plaintiff drop the knife. Plaintiff struggled, and Cruppenink then took him to the ground and pinned his arm. Cruppenink pulled his gun out and pointed it at Plaintiff. He told Plaintiff to drop the knife or he would shoot. During the struggle, Cruppenink was able to radio for help. Payne testified that she heard Cruppenink yell, "put the knife down" two or three times. She saw Cruppenink and Plaintiff on the floor and could see that Plaintiff had an object in his hand. Payne also testified that she heard Cruppenink holler for backup.

Plaintiff testified that he did not see any signs stating that trucks with a trailer longer than 20 feet long could not park on the road by his room. He testified that his truck was not interfering with traffic on the road and stated that he did not talk to Payne or anyone else at the motel about moving his truck. Plaintiff testified that he went to bed at about 6:00 p.m. on December 16, 1999. He stated that he had taken his hearing aid out and did not hear anyone knocking on his door. The first thing he heard was banging which was causing the top of the door to break in. Plaintiff got out of bed and saw the door crashing in. Plaintiff testified that he saw a man standing inside the door with a flashlight in one hand and a baton in the other. The man yelled obscenities and started down the hallway. Plaintiff thought he was being robbed and lunged

---

1. Payne testified that she did not tell Cruppenink that she was concerned that Plaintiff was damaging the motel room because she had no reason to believe he had damaged the room. However, she did testify that she told Cruppenink that she was willing to press charges if there was criminal damage to the room.

at the man. Plaintiff testified that he did have an electrician's knife in his room but did not have it in his hand. Plaintiff testified that the person who entered the room started beating him with a club all over his body and knocked him unconscious for a brief period of time. Plaintiff stated that, when he came to, the man said, "I'm going to kill you." Plaintiff testified that he was then handcuffed and frisked. Plaintiff stated that, before he was placed in the squad car, Cruppenink hit him on the handcuffs twice with a baton. Plaintiff testified that he believed that Billie Hurt, another deputy sheriff, was present when he was hit on the handcuffs.

Plaintiff was later moved from Cruppenink's squad car to Hurt's squad car and was transported to the Vermilion County jail by Hurt. Hurt testified that, when he and Deputy Pryor moved Plaintiff to his squad car, he noticed that Plaintiff had abrasions on one of his wrists which had been bleeding. Plaintiff was charged with resisting or obstructing a police officer and criminal damage to property, but the charges against him were nolle prossed on March 28, 2000. Plaintiff testified that, while he was being transported, he heard Hurt contact the Sheriff in Hancock County, Ohio, over the radio. On December 22, 1999, an article appeared in a Findlay, Ohio, newspaper which stated that Plaintiff accosted a Vermilion County Sheriff's Deputy with a knife. Plaintiff contacted the Hancock County Sheriff and was told that the newspaper had free access to material that came into their files.

Sergeant Daniel Auterman was the shift supervisor for Cruppenink's shift. Auterman testified that, on the night of the incident, he heard Cruppenink screaming for help over the radio. He arrived at the scene at approximately 7:20 p.m., after Plaintiff was in the back of Cruppenink's squad car. He testified that he did not arrest, handcuff or have any physical contact with Plaintiff. Auterman did assist in gathering Plaintiff's belongings from the motel room. Auterman testified that he did not have a conversation with any news media about Plaintiff's arrest. Cruppenink also testified that he never spoke with anyone in Hancock County, Ohio, or with any reporters anywhere regarding the incident involving Plaintiff.

On August 21, 2000, Plaintiff filed a Complaint (# 1) against Defendants Cruppenink, Auterman, W. Patrick Hartshorn, BPT Company, Inc. d/b/a Knight's Inn, and Payne. Plaintiff alleged that he was subjected to an unlawful search, excessive use of force and false imprisonment while staying at the Knight's Inn. Plaintiff alleged that Defendants Hartshorn, Cruppenink and Auterman were liable pursuant to 42 U.S.C. § 1983 for the violation of his constitutional rights. Plaintiff also alleged that all Defendants were liable based upon state law claims of trespass, battery, assault, false imprisonment, malicious prosecution, civil conspiracy and defamation. On January 29, 2001, Plaintiff filed a Motion for Default (# 17) seeking the entry of default against Defendant BPT Company, Inc. for failure to enter an appearance or respond to the Complaint. Plaintiff subsequently submitted a Memorandum (# 23) which cited authority in support of imposing liability on Defendant BPT Company, Inc. for the actions of Payne when she was acting as manager of the motel. On August 1, 2001, this court entered an Order (# 28) which granted Plaintiff's Motion and entered default against Defendant BPT Company, Inc. This court reserved ruling on the amount of any judgment to be entered against BPT Company, Inc. until after the trial is held in this case.

On February 1, 2002, Defendants Auterman and Cruppenink filed their Motion for Summary Judgment (# 46). Plaintiff also filed a Motion for Summary Judgment

(# 50). Both Motions are now fully briefed and ready for ruling.

### ANALYSIS

### I. PRELIMINARY MATTERS

In their Memorandum in Support of their Motion for Summary Judgment, Defendants state that Plaintiff agreed to dismiss Defendant Hartshorn and all official capacity claims against Defendants Cruppenink and Auterman. In his Response to Defendants' Motion for Summary Judgment, Plaintiff confirmed that he had agreed to dismiss Hartshorn and had agreed to pursue only individual capacity claims against Cruppenink and Auterman. Accordingly, Defendant Hartshorn is dismissed with prejudice.

In addition, Plaintiff stated that Defendant Payne was not located for service of process until near the end of discovery and was never served. Consequently, Payne is terminated as a Defendant in this case.

### II. MOTIONS FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). The court must determine whether "there are any genuine factual issues that properly can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party." *Peoria Area Landlord Ass'n v. City of Peoria,* 168 F.Supp.2d 917, 921 (C.D.Ill. 2001).

■ In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, when cross motions for summary judgment are filed, this court must construe all inferences in favor of the party against whom the motion under consideration is made. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001). The fact that both parties have moved for summary judgment, and thus both parties have simultaneously argued that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower this court to enter judgment as it sees fit. *See Heder v. City of Two Rivers,* 149 F.Supp.2d 677, 682 (E.D.Wis.2001). Summary judgment may be granted only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *Heder,* 149 F.Supp.2d at 682. The proper procedure is to assess the merits of each summary judgment motion independently. *Heder,* 149 F.Supp.2d at 683.

### B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that he is entitled to summary judgment against Defendant Cruppenink on his claim under 42 U.S.C. § 1983 for the violation of his constitutional rights. Plaintiff argues that Cruppenink violated Plaintiff's constitutional rights, as a matter of law, when he entered Plaintiff's motel room without a warrant, arrested Plaintiff and used excessive force. This court agrees with Plaintiff that Cruppen-

ink violated Plaintiff's constitutional rights when he broke in the door and entered Plaintiff's motel room. Accordingly, Plaintiff is entitled to summary judgment as to liability on Plaintiff's claim that he was subjected to an unlawful search. However, this court concludes that genuine issues of material fact preclude summary judgment in Plaintiff's favor on Plaintiff's excessive force and false imprisonment claims.

■■■■ The Fourth Amendment, which applies to the states through incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has noted that the zone of privacy protected by the Fourth Amendment is most clearly defined "when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Supreme Court has stated that "[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or office." *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Therefore, a hotel guest has a legitimate expectation of privacy within his hotel room. *People v. Eichelberger,* 91 Ill.2d 359, 63 Ill.Dec. 402, 438 N.E.2d 140, 143 (1982), *cert. denied,* 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982). It is well settled that the Fourth Amendment protections against unreasonable searches and seizures apply to individuals in hotel rooms as well as in homes. *See Hoffa,* 385 U.S. at 301, 87 S.Ct. 408; *Stoner v. State of Cal.,* 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *see also United States v. Conner,* 127 F.3d 663, 666 (8th Cir.1997); *United States v. Jerez,* 108 F.3d 684, 690 n. 4 (7th Cir.1997); *United States v. Diaz,* 814 F.2d 454, 457–58 (7th Cir.1987), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987); *United States v. Xiong,* 60 F.Supp.2d 903, 907 (E.D.Wis. 1999); *Eichelberger,* 63 Ill.Dec. 402, 438 N.E.2d at 142; *People v. Kozlowski,* 278 Ill.App.3d 40, 215 Ill.Dec. 4, 662 N.E.2d 630, 633 (1996).

Accordingly, the Supreme Court in *Stoner* held that a hotel clerk does not have the right to consent to the search of a guest's room. *Stoner,* 376 U.S. at 490, 84 S.Ct. 889. The Court noted that certain hotel personnel have the implied right to enter a guest's room to perform hotel duties, e.g., maid service or janitorial service, but there is no right to enter where the sole purpose for entering the room is to conduct a search. *Stoner,* 376 U.S. at 489, 84 S.Ct. 889. The Court stated that the constitutional protections afforded a guest in a hotel room "would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." *Stoner,* 376 U.S. at 490, 84 S.Ct. 889.

■■■■ Plaintiff argues that, because Payne could not consent to the entry of Plaintiff's motel room, Cruppenink violated Plaintiff's Fourth Amendment rights when he entered the room without valid consent and without a warrant. Defendant Cruppenink argues that *Stoner* does not apply here because Cruppenink did not enter the room to conduct a search, but instead entered at Payne's request to evict Plaintiff. However, "[i]t is beyond question ... that an unconsented police entry into a residential unit, be it a house or an apartment or a hotel or motel room, constitutes a search within the meaning of *Katz v. United States.*" 1 Wayne R. LaFave, *Search & Seizure,* § 2.3(b) at 474–75 (3d ed.1996) (footnotes omitted). This court therefore concludes that the entry of Plaintiff's motel room was a search and, based upon *Stoner,* Payne could not consent to the search.

This court also rejects Cruppenink's contention that he could enter the room for purposes of evicting Plaintiff. Cruppenink relies on *Neely v. Lott Hotels Co.*, 334 Ill.App. 91, 78 N.E.2d 659 (1948). In that case, the Illinois Appellate Court stated that, because the plaintiff was in arrears in paying for his hotel room, "defendant had the right to eject the plaintiff from the premises, using whatever reasonable force was necessary." *Neely*, 78 N.E.2d at 659. This court does not question that a hotel or motel may evict a guest who has not paid his or her bill. Under those circumstances, the guest no longer has an expectation of privacy in the room and a motel employee may consent to a search. *See United States v. Allen*, 106 F.3d 695, 699 (6th Cir.1997); *United States v. Akin*, 562 F.2d 459, 464 (7th Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Parizo*, 514 F.2d 52, 53–54 (2nd Cir.1975). This is because, at the conclusion of the rental period, "the guest has completely lost his right to use the room and any privacy associated with it." *Akin*, 562 F.2d at 464, *quoting United States v. Croft*, 429 F.2d 884, 887 (10th Cir.1970); *cf. Kozlowski*, 215 Ill.Dec. 4, 662 N.E.2d at 633–34 (where motel guest paid the arrearage on his room prior to police search, he had an expectation of privacy in his room and search was unlawful).

In this case, there is no dispute that Plaintiff had paid for his room for two days and the room was still paid for at the time Cruppenink entered the room. Plaintiff therefore had an expectation of privacy in his room and was entitled to the protection of the Fourth Amendment against unreasonable searches and seizures while he was in his motel room. Cruppenink testified that Payne wanted Plaintiff evicted because Plaintiff was verbally abusive over the telephone and she did not feel safe with him there and because Payne was concerned about criminal damage to the room. Payne also testified that she was worried about whether Plaintiff was all right because he seemed upset on the phone. This court concludes that none of these reasons justified Cruppenink's entry into Plaintiff's room.

There are situations when the circumstances justify a warrantless entry into a hotel room. In *United States v. McConnell*, 903 F.2d 566, 569 (8th Cir.1990), *cert. denied*, 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991), the Court held that the police officer's entry of hotel room was not illegal where the hotel guest had registered under a false name and left a loaded revolver behind in his room when he moved to another room at the hotel. The Court concluded the entry of the room was warranted because the use of false identification is a crime under Florida law and because the officer entered the room based upon fear of harm to himself, hotel personnel and hotel guests. *McConnell*, 903 F.2d at 569; *see also United States v. Rambo*, 789 F.2d 1289, 1294 (8th Cir.1986) (police officers justified in entering hotel room to arrest the defendant, who had been running naked through the halls and screaming, for violation of Minnesota's undesirable guest statute); *United States v. Goldenstein*, 456 F.2d 1006, 1010 (8th Cir. 1972), *cert. denied by Ray v. United States*, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974) (police officer's entry of the defendant's hotel room by having the hotel clerk open the door was reasonable where the police were called to the hotel because of a severe fight and found a person lying on the floor in the hotel with a gunshot wound and were informed that the defendant had gone upstairs just after the fight, carrying a gun and appearing to be wounded); *Eichelberger*, 63 Ill.Dec. 402, 438 N.E.2d at 145 (warrantless entry into the defendant's hotel room for purpose of effecting an arrest did not violate Fourth Amendment because police officers

reasonably believed that a felony, delivery of a controlled substance, was being committed in their presence). This court concludes that none of these emergency or exigent circumstances were present in this case.

In *People v. Dale*, 301 Ill.App.3d 593, 234 Ill.Dec. 827, 703 N.E.2d 927 (1998), the Illinois Appellate Court, Fourth District, stated that the court did not agree "with the State's assertion that evicting a motel tenant provides an independent exception to the fourth amendment." *Dale*, 234 Ill. Dec. 827, 703 N.E.2d at 932. In that case, the motel manager requested assistance from police officers in evicting the defendant from his motel room because the motel manager suspected the defendant was trafficking drugs from his room. The court stated that the State was essentially arguing that the police officers were properly performing their "community caretaking" function when they agreed with the motel manager's request to assist in removing the defendant from his motel room. *Dale*, 234 Ill.Dec. 827, 703 N.E.2d at 932. However, the court determined that "the community caretaking function does not provide an independent exception to the requirements of the fourth amendment." *Dale*, 234 Ill.Dec. 827, 703 N.E.2d at 932; *cf. United States v. McPherson*, 1998 WL 227154, at *6 (D.Kan.1998) (police entry into motel room based upon management request due to heavy smell of marijuana smoke coming from room was proper because a Kansas statute "expressly authorize[d] eviction under the circumstances presented here").[2]

This court wholeheartedly agrees with Justice Steigmann's well written opinion in *Dale*. As noted previously, the Fourth Amendment protections against unreasonable searches and seizures apply to individuals in hotel rooms as well as in homes. This court believes that these Fourth Amendment protections do not go away because of vague, unsubstantiated concerns about damage to the room or any time a motel or hotel clerk has an argument with a guest over the telephone which the clerk characterizes as "verbally abusive." This court further concludes that these Fourth Amendment protections certainly do not go away because of a dispute about where a vehicle is parked. This court agrees with Plaintiff that the remedy for that type of dispute is to call a tow truck, not to enter the motel room without consent.

 Cruppenink argues that he is entitled to qualified immunity on this claim. Government officials performing discretionary functions may avoid personal liability for damages by invoking the defense of qualified immunity, a powerful shield that insulates officials from liability as long as their conduct does not violate a "clearly established" constitutional right "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Cruppenink argues that he is entitled to qualified immunity because he "could have reasonably believed that he had valid grounds to enter the motel room." He also argues that "[a]s there is a lack of prevailing case law in Illinois with closely analogous facts to the incident at issue, Cruppenink is entitled to qualified immunity."

 As noted, qualified immunity applies unless the defendant violated a "clearly established" constitutional right. The Supreme Court has cautioned that whether a right is clearly established must not be viewed at too great a level of generality, or else the doctrine would allow immunity in too few cases, and thus unduly hamper public servants. *See Anderson v.*

**2.** This court notes that Illinois does not have a comparable statute.

*Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d.523 (1987). As the Seventh Circuit has observed, "[p]ublic officials should not need to have the insight of constitutional law scholars, or the hindsight of Monday morning quarterbacks, to succeed in a qualified immunity defense." *Levenstein v. Salafsky,* 164 F.3d 345, 351 (7th Cir.1998). Accordingly, Plaintiff has the burden of pointing out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. *Rice v. Burks,* 999 F.2d 1172, 1174 (7th Cir.1993).

This court concludes that Plaintiff has met this burden. It has been clearly established at least since 1964, when the Supreme Court decided *Stoner,* that a motel clerk cannot validly consent to the search of a guest's motel room. The Supreme Court has stated that a reasonable reading of *Stoner* shows that "the police could not rely upon the obtained consent because they knew it came from a hotel clerk, knew that the room was rented and exclusively occupied by the defendant, and *could not reasonably have believed that the former had general access to or control over the latter." Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (emphasis added). The Court further stated, "[a]s *Stoner* demonstrates, ... law enforcement officers may [not] always accept a person's invitation to enter premises." *Rodriguez,* 497 U.S. at 188, 110 S.Ct. 2793. This court concludes that a reasonable police officer would have known that Plaintiff had a clearly established right to be free from a search of his motel room based upon the consent of a motel clerk or manager. This court further concludes that a reasonable police officer would not have believed that the circumstances of this case warranted an unconsented entry into Plaintiff's motel room. *See Dale,* 234 Ill.Dec. 827, 703 N.E.2d at 932 (evicting a motel tenant

does not provide an independent exception to the Fourth Amendment). Accordingly, this court concludes that Cruppenink is not entitled to qualified immunity.

For all of the reasons stated, this court concludes that Plaintiff is entitled to summary judgment on Plaintiff's claim that Cruppenink is liable under 42 U.S.C. § 1983 for conducting an unlawful search in violation of Plaintiff's Fourth Amendment rights.

 This court also concludes, however, that Plaintiff is not entitled to summary judgment on his claim against Cruppenink for excessive force and false imprisonment. The testimony of Plaintiff, Cruppenink and Payne raises numerous disputed issues of material fact regarding the events that occurred after Cruppenink entered Plaintiff's motel room. If the jury believes Cruppenink's testimony that Plaintiff had a knife and struggled with him, it could decide that Cruppenink did not use excessive force in subduing Plaintiff and that Cruppenink had probable cause to arrest Plaintiff. Also, while Plaintiff testified that he was hit twice on the handcuffs, other witnesses deny that this occurred. Accordingly, this court concludes that Plaintiff is not entitled to summary judgment against Cruppenink on his excessive force claim or on his false imprisonment claim.

For all of the reasons stated, Plaintiff's Motion for Summary Judgment (# 50) is GRANTED as to Plaintiff's claim against Cruppenink for unlawful search and DENIED as to Plaintiff's claim against Cruppenink for use of excessive force and false imprisonment.

## C. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. AUTERMAN

 Defendant Auterman argues that he is entitled to summary judgment on all

of Plaintiff's claims because he did not arrive at the scene until after Plaintiff was secured in the back of Cruppenink's squad car and had no personal involvement in any of the actions Plaintiff has complained of. Auterman additionally notes that he did not speak to any media source concerning Plaintiff's arrest nor did he speak with the State's Attorney to determine what charges, if any, should be brought against Plaintiff.

■ Plaintiff does not dispute that personal involvement is an essential precondition to liability under § 1983. *See Kitzman–Kelley v. Warner*, 203 F.3d 454, 458 (7th Cir.2000). However, Plaintiff notes that Auterman was Cruppenink's supervisor and argues, citing *Chavez v. Illinois*, 251 F.3d 612, 651 (7th Cir.2001), that a supervisor will be found liable if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. Plaintiff notes that the evidence shows that Auterman was present when Plaintiff was moved from Cruppenink's squad car to Hurt's squad car. Plaintiff contends that Plaintiff was struck on the handcuffs at that time and that Auterman "must have been present and watched these events unfold." However, this court agrees with Auterman that there is no evidence to support this argument. A careful reading of Plaintiff's testimony shows that Plaintiff stated that he was struck on the handcuffs prior to being placed in Cruppenink's squad car. In fact, Plaintiff clearly testified that he was moved from the first squad car to the second squad car "[w]ithout incident." Therefore, Auterman's presence at the time of this transfer obviously provides no basis for liability on the part of Auterman.

In *Chavez*, the Seventh Circuit stated:

[T]o be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable.... The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez*, 251 F.3d at 651 (citations omitted).

This court concludes that Plaintiff has not presented any evidence which would support supervisory liability on the part of Auterman based upon this standard. This court further concludes that no evidence has been presented which would raise a genuine issue of material fact regarding whether Auterman is liable on any of Plaintiff's state law claims. Accordingly, this court concludes that Auterman is entitled to summary judgment on all of Plaintiff's claims.

### B. CRUPPENINK

■ Defendant Cruppenink first argues that he is entitled to summary judgment on Plaintiff's claim of unlawful search based upon qualified immunity. This court disagrees as it has already rejected Cruppenink's qualified immunity argument and, in fact, has concluded that Plaintiff is entitled to summary judgment as to liability on that claim. Cruppenink also argues that he is entitled to summary judgment on Plaintiff's state law claim of trespass because "he had express permission to enter the room and thus cannot be considered a trespasser." This court has concluded that Payne could not validly consent to Cruppenink's entry of Plaintiff's motel room. Therefore, this court concludes that Cruppenink is not entitled to summary judgment on Plaintiff's claim of trespass.

■ Cruppenink also argues that he is entitled to summary judgment on Plaintiff's claim of civil conspiracy because

Plaintiff has not shown that any violation of his rights was caused in furtherance of any agreement between Cruppenink and any other Defendant. In response, Plaintiff argues that there is evidence from which a jury could find that a civil conspiracy existed between Cruppenink and Payne. Plaintiff notes that it is undisputed that Cruppenink consulted with Payne several times regarding breaking into Plaintiff's room. Plaintiff also argues that "[b]reaking into a room, whether it was to force a movement of a vehicle or to force the eviction of a paid up guest, asleep in his bed, not disturbing anyone, without any judicial process was unlawful." This court agrees with Plaintiff that a jury could find Cruppenink liable for civil conspiracy based upon his agreement with Payne to break into Plaintiff's room. Accordingly, Cruppenink is not entitled to summary judgment on Plaintiff's state law claim of civil conspiracy.

▮ Cruppenink additionally argues that he is entitled to summary judgment on Plaintiff's claim of defamation. This court agrees.

▮ To establish defamation under Illinois law, a plaintiff must show: (1) the defendant made a false statement about the plaintiff; (2) there was an unprivileged publication to a third party with fault by the defendant; and (3) the publication damaged the plaintiff. *Parker v. House O'Lite Corp.*, 324 Ill.App.3d 1014, 258 Ill. Dec. 304, 756 N.E.2d 286, 291–92 (2001), *app. denied*, 197 Ill.2d 565, 261 Ill.Dec. 523, 763 N.E.2d 772 (2001). Cruppenink contends that there is no evidence that he made a false statement about Plaintiff or provided any information of any kind to the Findlay, Ohio, newspaper. Plaintiff argues that a jury could find Cruppenink liable because he repeatedly falsely told other police officers and Payne that Plaintiff had a knife and that "it is entirely to be suspected that the story would get picked

up somehow and get published in a newspaper." Plaintiff has not cited any case law support for his argument that statements by a police officer during the course of an arrest, not made to any news media, can support a claim for defamation. This court concludes that Plaintiff has not presented any evidence which would raise a genuine issue of material fact regarding whether the necessary elements of a defamation claim exist in this case. Accordingly, Cruppenink is entitled to summary judgment on Plaintiff's state law claim of defamation.

IT IS THEREFORE ORDERED THAT:

(1) Defendant Rosella Payne has never been served in this case and is terminated as a Defendant.

(2) Plaintiff has agreed to dismiss Defendant W. Patrick Hartshorn as a Defendant in this case. Accordingly, Defendant Hartshorn is dismissed with prejudice.

(3) Plaintiff's Motion for Summary Judgment (# 50) is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED as to liability on Plaintiff's claim against Defendant Tom Cruppenink under 42 U.S.C. § 1983 for unlawful search and is DENIED as to Plaintiff's claims against Cruppenink under 42 U.S.C. § 1983 for use of excessive force and false imprisonment.

(4) The Motion for Summary Judgment (# 46) filed by Defendants Cruppenink and Daniel Auterman is GRANTED in part and DENIED in part. Judgment is entered in favor of Auterman on all of Plaintiff's claims. Auterman is terminated as a Defendant. In addition, judgment is entered in favor of Cruppenink on Plaintiff's state law claim of defamation. The only claims remaining in this case are against Cruppenink, in his individual capacity. Accordingly, this case will proceed to trial on the issue of damages on Plaintiff's claim

of unlawful search and on the issue of liability and damages on Plaintiff's federal claims of excessive force and false imprisonment and Plaintiff's state law claims of trespass, battery, assault, false imprisonment, malicious prosecution and civil conspiracy.

(5) This case remains scheduled for a final pretrial conference on May 24, 2002, at 3:30 p.m. and is set for a jury trial on June 10, 2002, at 9:30 a.m.