In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2223

CHARLES F. FINSEL,

*Plaintiff-Appellee,*

*v.*

THOMAS CRUPPENINK, in his
individual and official capacities as
Vermilion County Deputy Sheriff,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-2239—**Michael P. McCuskey**, *Judge.*

ARGUED FEBRUARY 14, 2003—DECIDED APRIL 21, 2003

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. This is but another in what seems
like an ever-increasing flow of interlocutory appeals in
cases where district courts deny motions for summary
judgment based on qualified immunity. Although the ap-
peal is certainly permissible, *Behrens v. Pelletier*, 516 U.S.
299 (1996), it will not, even if successful, serve the primary
purpose of permitting interlocutory review—sparing a
government defendant the rigors of a trial. That goal will
not be achieved because other parts of this case cannot
be resolved, short of a settlement, without a trial. Never-

theless, despite concerns about the wisdom of this sort of piecemeal approach to cases like this we soldier on, starting with the facts viewed in the light most favorable to the plaintiff, Charles Finsel, a (now) 71-year-old man who had a rather unsettling night at a Knight's Inn motel in Danville, Illinois.

Finsel was 68 years old in December 1999 when he left Findlay, Ohio, for Danville, where he hoped to sell hardware equipment at machinery auctions. On December 15 he arrived at a Knight's Inn—a motel set up as a series of cottages, each with two units and a designated carport. Finsel paid for two nights lodging, and because the carport could only accommodate average-size vehicles, he parked his 36-foot truck on a drive next to his room.

Everything was fine the first night of his stay, but on the second night Rosella Payne, the motel manager, came on duty. She wanted his truck moved. She said there were signs posted which prohibited parking trucks over 20 feet long in the area where Finsel's truck was parked and that it was blocking access to parking for another room at the motel, even though that room was unoccupied. Payne said she called Finsel's room and told him he would have to move his truck but he refused unless he received a refund of his payment for the room. He told her she was engaging in "harassment." Payne sent two security people to the door, but Finsel refused to answer. She tried to telephone him again but he refused to answer his phone.

Payne then called the local county sheriff for assistance. Deputy Tom Cruppenink responded and spoke with Payne. We will save the details of their conversation for later. For now, it is enough to know that, as a result of his meeting with Payne, Cruppenink went to Finsel's room and knocked, first with his hand and then with his flashlight. He said he identified himself as a deputy. Payne, who

was with Cruppenink, then tried to open the door with her key but the inside chain on the door was engaged. Payne then agreed that Cruppenink should kick the door in. He did, and when he entered the room, he said he shone his flashlight and identified himself. Cruppenink's story is that Finsel came at him holding a knife. There was a struggle and Cruppenink took Finsel to the ground and pointed his gun at him. Cruppenink radioed for help. By the time another deputy arrived at the motel, Finsel was in custody in the back of Cruppenink's squad car.

Finsel's story is quite different. He says he did not see any signs regarding parking restrictions based on truck size and, furthermore, his truck was not interfering with anyone. Finsel also says no one from the motel, including Payne, talked to him about moving the truck. He says he went to bed at around 6 p.m. after taking off his hearing aid. He claims the first thing he heard was banging on the door. Then he saw a man standing in the doorway, and he thought he was being robbed. He acknowledged that he had an electrician's knife in his room, but he said he was not holding it. He says he was beaten, and when he came to, he heard someone say, "I'm going to kill you."

Finsel was taken to the county jail and charged with resisting a police officer and criminal damage to property. The charges were later dropped.

Finsel filed this case pursuant to 42 U.S.C. § 1983 and moved for summary judgment as to liability against Cruppenink. Cruppenink filed a motion for summary judgment based on qualified immunity as to his entry into the motel room. Finsel's motion was granted as it went to liability on his claim based on an unlawful search but, because there were disputed material facts, it was denied on his excessive force and false imprisonment claims. The deputy's motion for qualified immunity was also denied.

That decision is the subject of this appeal. And regardless of how this appeal is resolved, the excessive force/false imprisonment claims will, absent a settlement, have to be resolved with a trial.

We engage in a two-part inquiry in civil rights actions to assess whether a defendant is entitled to qualified immunity. We first determine whether a plaintiff has alleged a deprivation of a constitutional right. The question is whether, taken in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 121 S. Ct. 2151 (2001). If a constitutional right is violated, we next determine whether it was clearly established at the time of the alleged violation. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002). To be clearly established, the contours of the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). Recently the Court has cautioned that, for a right to be clearly established, it is not necessary that there be earlier cases with materially similar facts. Rather, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002). As with other summary judgment motions, our review of motions involving qualified immunity is *de novo*. *Saffell v. Crews*, 183 F.3d 655 (7th Cir. 1999).

The question whether a clearly established constitutional right was violated in this case depends on what Cruppenink knew when he forced his way into the room, which in turn depends on what Payne told him. The two

do not always agree on what was said. Deputy Cruppenink says that Payne told him that Finsel was argumentative and verbally abusive on the telephone when she called to ask him to move his truck; in fact, that Finsel refused to move his truck. According to Cruppenink, Payne told him she was afraid of Finsel, did not feel safe with him in the motel, and she wanted him evicted; she said that her attempts to reach Finsel by telephone were unsuccessful, as were attempts to reach Finsel by knocking on the door of his room. Cruppenink said Payne gave him permission to force the door open: "she still wanted to go that route. She wanted him evicted. She was very concerned about criminal damage to the motel room, and that she requested that I force the door open."

At her deposition, Payne did not entirely support Cruppenink's story, and her version is itself somewhat contradictory. She testified that Finsel never said "one way or the other" whether he would move his truck. She also said there was nothing unusual about Finsel's voice on the phone. But later she said Finsel was argumentative that he wasn't going to move his truck and said he wanted the money back that he had used to pay for his room. She said that what she told Cruppenink was that "we had a gentleman back there that would not move his truck and I needed his truck moved." She also testified that, in fact, the truck had been moved twice, but apparently not to the location she desired. She said that she did not tell Cruppenink that she was afraid Finsel had damaged the room. In fact, she said she had no reason to think he had. She admitted saying, however, that if there was criminal damage, she would pursue charges. Another aspect of her story, however, was that at the time she called the police she was worried about whether Finsel was all right. She said, "[T]he last time I spoke to him he was upset." But again she said that she "wanted the truck moved, that was my main reason" for calling the police.

Despite the differences in these stories, no one argues that we lack jurisdiction over this appeal. *See Johnson v. Jones*, 515 U.S. 304 (1995), and *Garvin v. Wheeler*, 304 F.3d 628 (7th Cir. 2002). Rather, the issue as presented to us is an "abstract issue of law" in which the facts must be interpreted in the light most favorable to Mr. Finsel. *See Behrens v. Pelletier*, 116 S. Ct. 834 (1996). And here, that means we must rely on Payne's version of what she told Cruppenink, which comes down to the fact that she wanted the truck moved, Finsel might be upset, and that he was not happy about being asked to move his truck.

Given these facts, the issue is whether entry into the room violated Finsel's constitutional rights and whether those rights were clearly established so that Cruppenink would understand that what he was doing would be a violation of those rights. It has long been established that protection against unreasonable searches and seizures is not limited to one's home but extends as well to a person's privacy in temporary dwelling places such as hotel or motel rooms. *Stoner v. California*, 376 U.S. 483, 490 (1964); *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996); *United States v. Rosario*, 962 F.2d 733, 736 (7th Cir. 1992). Furthermore, hotel personnel cannot consent to the search of a guest's room. The Court said in *Stoner* that the "constitutional protection against unreasonable searches and seizures . . . would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." At 490. And in *United States v. Nelson*, 459 F.2d 884, 886-87 (6th Cir. 1972), a motel manager's consent to and participation in the two warrantless police searches did not serve to waive the defendants' constitutional rights in relation to their rented rooms.

However, as in *Stoner*, courts recognize that motel and hotel tenancy is ordinarily short-term. If the tenancy is terminated for legitimate reasons, the constitutional protection may vanish. In *United States v. Rahme*, 813 F.2d

31, 34 (2d Cir. 1987), the court noted that when "a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room . . . ." *See also*, *United States v. Akin*, 562 F.2d 459 (7th Cir. 1977), and *United States v. Rambo*, 789 F.2d 1289, 1295-96 (8th Cir. 1986).

These cases, however, do not tell the whole story. They involve motions in criminal trials to suppress evidence seized after an entry into a motel (or hotel) room. But in addition to chasing criminals, law enforcement officers have another role in our society, a "community caretaking" function. The Illinois Supreme Court has set out the various police functions in *People v. Murray*, 560 N.E.2d 309 (Ill.1990). The first involves an arrest, which must be supported by probable cause; the second involves a "*Terry*" stop (*Terry v. Ohio*, 392 U.S. 1 (1968)), which requires a reasonable suspicion of criminal activity. The third, which is relevant here, is the community "caretaking," or public safety, function. In Illinois, a "peace officer" is "vested by law with a duty to maintain public order." 720 ILCS 5/2-13. The caretaking function is, of course, not unique to Illinois. In *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), the Court said that police officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

In *People v. Dale*, 703 N.E.2d 927, 932 (Ill. App. 1998), also involving a motel search, the court drew a distinction between the requirements for probable cause as opposed to the need for community caretaking. Because there was an unusually high volume of traffic in and out of a motel room, and because the cleaning staff observed items in the room that they suspected were related to drug

trafficking, the motel manager decided to tell the defendant he would have to leave. Then, because of concern for his own safety, the manager called the police and asked them to remove the defendant from his room. In doing so, the police found cocaine. The court ordered suppression of drugs seized from a motel room. However, in discussing the peace-keeping function of the police, the court said:

> In this case, the motel manager's desire to avoid a confrontation with a guest under these circumstances is entirely reasonable, and his decision to terminate defendant's occupation of the motel room, once he suspected that defendant was trafficking drugs from the room, is commendable. Likewise, we commend the police officers for their willingness to facilitate defendant's peaceful removal from the motel. Such activity is entirely consistent with their duties as "peace officers" (720 ILCS 5/2-13 (West 1994) (defining a "peace officer" as one "vested by law with a duty to maintain public order")), and it comports with the discussion of the *community caretaking* function of the police discussed in Murray.

The court was clearly sanctioning the actions of the police in facilitating the removal of the defendant even though the evidence seized during the removal was inadmissible at a subsequent criminal trial.

The issue for us is whether Cruppenink could reasonably have thought that Payne's desire to have a truck moved by an uncooperative guest allowed him to kick the door in. Cruppenink can be charged with knowledge that it is clearly established that a person is entitled to protection against unreasonable searches and invasions of privacy in a motel room and that motel personnel cannot give permission to enter a room. *Stoner*. Here, on the facts as we must view them, it is clear that Finsel was not doing anything to disturb the public order. He was breaking no

laws. And it was Cruppenink's actions which were far from peaceful. Surely a reasonable officer should know there are limits to what he can do in the name of caretaking. Caretaking cannot reasonably be seen as license to take outrageous steps to get a truck moved. Calling a tow truck would have been a more reasonable way to solve the problem.

We have found no case specifically outlawing Cruppenink's conduct. But as the Court recently said in *Hope*, even in novel situations, in an appropriate case, officials can be on notice that their conduct violates established law. This is such a case. Given the facts as we must interpret them, Cruppenink should have known that he could not break down the door and forcibly enter Finsel's motel room.

Accordingly, the decision of the district court denying Deputy Cruppenink's motion for qualified immunity is AFFIRMED.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*