**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael HILLARD, Defendant–Appellant.**

No. 02–4184.

United States Court of Appeals, Seventh Circuit.

Argued July 8, 2003.

Decided July 16, 2003.

Before KANNE, ROVNER, and WILLIAMS, Circuit Judges.

### ORDER

In June 2001 three Chicago police officers pulled over convicted felon Michael Hillard as he was driving a motor scooter, and then arrested him after finding a gun in his pocket. A jury later found Hillard guilty of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). Because Hillard had three previous convictions for violent felonies, a federal district court sentenced him as an armed career criminal, see id. § 924(e)(1), to 216 months' incarceration and three years' supervised release. On appeal Hillard argues that the court erred by denying his motion to suppress evidence because in his view the police lacked probable cause to arrest him. He also contends that § 922(g)(1) is unconstitutional. We affirm.

■ On June 28, 2001, officers Frank Depeder, John Souchet, and Tony Weathers were traveling in a marked police car when they pulled over Hillard as he was driving a motor scooter near a Chicago housing project. After stopping, all three officers exited their car and approached Hillard, who remained perched on the scooter. Depeder asked Hillard for his driver's license. Hillard responded that he did not have one. Depeder then asked Hillard to step off the scooter for a pat-down search. As Hillard stepped down, he told the officers that he had a gun in his pocket. Souchet then handcuffed Hillard, and Depeder retrieved the gun.

Before trial Hillard moved to suppress the gun and his statement that he had it on the ground that the officers lacked probable cause to arrest him. At the suppression hearing, Depeder and Weathers testified that the motor scooter did not have a license plate or an application sticker. Depeder further testified that the scooter's owner (he could not remember her name) arrived later at the police station and presented a receipt for the scooter, along with a license application sticker that should have been on the scooter. According to Depeder, the owner said that she did not put the sticker on the bike because she was afraid that it would be stolen. The scooter's owner turned out to be Hillard's sister, Flora Kidd, who contradicted the officers by testifying that the scooter had a sticker affixed to it. Kidd

also testified that after Hillard's arrest, one of the officers at the police station handed her the sticker that had been on the scooter. The district court denied the motion.

At trial all three officers testified that the bike did not have a sticker, and Kidd iterated her suppression hearing testimony. The jury found Hillard guilty. In a sentencing memorandum Hillard then argued that § 922(g)(1) is an unconstitutional exercise of Congress's Commerce power, a contention rejected by the district court.

■ On appeal Hillard argues that the district court erred by denying his motion to suppress, contending that the government failed to establish probable cause to arrest. We review a district court's factual findings in a suppression hearing for clear error, and its legal conclusions and mixed questions of law and fact de novo. *United States v. French*, 291 F.3d 945, 950–51 (7th Cir.2002). In their briefs, both Hillard and the government focus on whether the bike had a sticker, and the impact of that determination on the propriety of the arrest. But the existence of a sticker was relevant to the lawfulness of the *stop*, not the *arrest*. The officers did not immediately arrest Hillard, they merely pulled him over. In light of the routine nature of this stop (this was not a custodial interrogation), the officers needed only reasonable suspicion of criminal activity to justify the stop, not probable cause. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Finsel v. Cruppenink*, 326 F.3d 903, 907 (7th Cir. 2003); *United States v. Felix–Felix*, 275 F.3d 627, 636 (7th Cir.2001). And Hillard's claim that the police did not have probable cause to *arrest* him is frivolous. The "sticker issue" notwithstanding, Hillard was driving without a license, *see* 625 ILCS 5/6–101, and admitted to carrying a concealed weapon, *see* 720 ILCS 5/24–1(a)(4), which supplied the police with probable cause to justify a warrantless arrest.

The parties also quibble over whether the district court made a sufficient finding that the officers believed that the scooter did not have a sticker, which bears on whether they acted with reasonable suspicion. Hillard argues that the court should have granted his suppression motion because it was not convinced that the bike lacked a sticker. According to Hillard, the court failed to credit the officers' testimony, which was crucial to resolving the motion because the government relied solely on their testimony. In making its ruling, the court acknowledged the conflicting testimony presented at the suppression hearing:

> I am going to deny the motion to suppress because I think that two officers have testified that they saw no plate or sticker. I wasn't there, so I don't know whether or not their testimony is truthful. There is a variety of scenarios that would validate what Miss Kidd had to say, as well as what the officers had to say, not the least of which is something can be there but not be seen, particularly since he had made a U turn and there was no registration, apparently, everyone would agree, on the front of the scooter. Maybe they got so close they couldn't see. I don't know. Obviously, her – her testimony necessarily, though, does seem to contradict theirs [sic] in terms of her bringing that sticker in.
>
> In any event, Miss Griffin [the prosecutor] can raise the issue. So I think that they had a valid reason to pull him over. And, apparently, there was nothing that they said to him that forced him to subject himself to a pat down or to disclose the gun.

(App.13.) Hillard argues that the judge did not credit the officers' testimony, but

he is wrong–in explaining his ruling, Judge Andersen was merely pointing out that both the officers and Kidd could have been telling the truth. Having acknowledged as much, however, Judge Andersen added that he thought the officers "had a valid reason to pull him over," a clear sign that he was crediting their testimony. Moreover, comments made by the court at sentencing reinforce this conclusion. *See French*, 291 F.3d at 951 (appellate court reviews entire record in evaluating factual findings for clear error). The court explicitly embraced the officers' version of events when discussing the propriety of a downward adjustment for acceptance of responsibility:

> THE COURT: Okay. Mr. Galvan [defense counsel], would you like your client to supplement what he has to say or do you want just to argue the point?
>
> MR. GALVAN: No, Judge, he is going to stand on his statement. The only thing that I would add, Judge, is that there is nothing that has been said in this trial or comments today that is going to convince me that this was not anything but a racial-profiling case. I think that—
>
> THE COURT: Oh–well, just to respond, so you can address what is going on in my mind, because I have to make some big decisions regarding Mr. Hillard. You got somebody driving around without [a] proper license on a motor scooter. What do you want the police to do? Are they supposed to just ignore all that?
>
> MR. GALVAN: Your Honor, in the reality–
>
> THE COURT: That doesn't make sense.
>
> MR. GALVAN: In the reality of the streets, the TAC officers do not give tickets. They are not out there to give tickets. They are out there looking for

individuals that fit profiles of gangbangers and people that are carrying guns.

> THE COURT: And if somebody who fits that profile is– happens to be driving illegally through a housing project where the citizens really need protection, don't you want the police stopping him and saying, "What is going on here? Why don't have you a proper license?" And as you recall, in this particular case Mr. Hillard–and you are trying to get credit for this now–and God bless you for it– says, "I"–tells them he has got a gun, assuming that they are telling the truth. And I haven't heard anything to contradict it.
>
> So I am not blaming him for the arguments you made, but–at this point in time Mr. Porter [the prosecutor] has a point. Is Mr. Hillard going to be honest with us about what he was doing and why he was doing it? And I am telling you there is – as you well know, there is a lot of time at stake here. But I can't see impugning the police work at all when I think that is why TAC officers were there. If–big strong guys like Mr. Hillard are riding–driving around on the streets of the housing project with unlicensed vehicles or expired licensed vehicles, of course that is a valid reason for the police to stop him and say, "What is going on?"

(Sent. Tr. at 12–14.) These comments leave little doubt that the court credited the officers' testimony, and the court did not clearly err in finding that the officers did not see a sticker.

█ Hillard also argues that § 922(g)(1) is unconstitutional. In his view, Congress exceeded its authority by enacting the provision because the intrastate possession of a firearm does not substantially affect commerce. But this court has repeatedly rejected similar challenges to the constitutionality of § 922(g)(1), and Hillard cites

no authority nor gives any novel reason to justify departing from those decisions. *See United States v. Bass,* 325 F.3d 847, 849 (7th Cir.2003); *United States v. Fleischli,* 305 F.3d 643, 652–53 (7th Cir. 2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1923, 155 L.Ed.2d 828 (2003); *United States v. Lemons,* 302 F.3d 769, 772–73 (7th Cir.), *cert. denied,* 537 U.S. 1049, 123 S.Ct. 642, 154 L.Ed.2d 523 (2002); *United States v. Mitchell,* 299 F.3d 632, 633–35 (7th Cir.2002), *cert. denied,* 537 U.S. 1130, 123 S.Ct. 908, 154 L.Ed.2d 817 (2003).

AFFIRMED.